Opinion filed February 8, 2007


















 
 
  
 
 







 
 
  
 
 




Opinion filed
February 8, 2007

 

 

 

 

                                                                        In The

    Eleventh
Court of Appeals

                                                                   __________

 

                                                          No. 11-06-00315-CV 

                                                    __________

                              IN RE HONDO LANCE SLOAN, Relator

 



 

                                            Original
Habeas Corpus Proceeding 

 



                                                                   O
P I N I O N

Finding that Hondo Lance Sloan had violated
temporary orders in a divorce case, the trial court placed him in the Jones
County Jail for 180 days for criminal contempt and 180 days for civil
contempt.  Hondo filed a petition for a
writ of habeas corpus in this court seeking to have Judge Hagler=s orders declared void.  We previously ordered that Hondo be released
pending final action on this writ.  We
order his unconditional release and also 
order him released from the conditions of the bond previously set on
temporary orders by this court.








Stacey (Kline) Sloan sued Hondo for divorce on
June 30, 2006.  There is a dispute as to
whether they were ever married.  On July
7, 2006, Stacey filed an unsworn motion for substituted service.  She attached two documents to her
motion:  an affidavit, also dated July 7,
2006, from Chuck Horton regarding his attempts to serve the petition for
divorce upon Hondo in Hawley and an unsworn statement from the Chief of Police
of Hawley stating that Hondo=s
mother had told him that Hondo was working in Iraq at the time.  She also informed him that Hondo would be in Iraq until
January 2007.

Also on July 7, 2006, the trial court ordered that
substituted service would be proper and could be accomplished by leaving a copy
of the citation and accompanying documents with anyone sixteen years of age or
older at Hondo=s mother=s house in New Mexico.  A copy of the citation, of the temporary
restraining order, of the order on substituted service, of the order extending
the temporary restraining order and notice of hearing, of the notice of hearing
on the application for protective order, and of the petition were left there
with Hondo=s
stepfather on July 27, 2006.  The returns
of the service of the citations and notices were not filed in Jones County
until September 8, 2006.

On August 3, 2006, approximately one month before
the returns were filed, the trial court heard Stacey=s
motion for temporary orders and protective order.  Although the original petition and motion for
substituted service had been signed by Burt L. Burnett, an attorney from Abilene, as Stacey=s attorney, Johnny Morris Moore II, an
attorney from Sweetwater, substituted as Stacey=s
attorney at the temporary hearing.  The
record reflects that Stacey appeared at the hearing.  There were no other appearances.

No testimony was taken at the hearing on temporary
orders.  Rather, the following occurred:

Judge
Hagler [addressing Mr. Moore]:  If you
would, just ask -- state for the record what relief it is you=re requesting today.

 








Moore
responded by telling the trial court what Stacey wanted.  The trial court entered its oral order in
accordance with that request and also ordered that the temporary restraining
order become a temporary injunction.  The
trial court also orally ordered that Hondo deliver a Dodge pickup and a stock
trailer to Stacey by noon on August 5, 2006. 
Stacey was also awarded all horses in her possession; interim attorney=s fees of $7,500, plus all court costs;
spousal support in the amount of $3,500 per month, beginning August 7, 2006;
and Aretro@ spousal support in the amount of
$4,000. The trial court also extended the protective order.  Moore
offered Aapproximately
11 to 12 videotapes@ in
response to the trial court=s
question, ADid you
need to tender any evidence at this time?@  The trial court admitted the videotapes; they
are not a part of the record in this case. 
Additional specific details of the trial court=s
order were added to the written order signed by the trial court on August 16,
2006.  

Hondo filed a special appearance as well as a plea
in abatement on August 14, 2006.  It
appears that neither of those were heard. 
Those matters are not made the subject of this application for a writ of
habeas corpus, and we mention them only in order to present a correct timeline
of events.  On that same date, Hondo also
filed an answer and a counter petition subject to his special appearance and
plea in abatement.  On August 25, 2006,
Hondo filed a motion to vacate or modify the temporary orders.  The motion was heard on September 8, 2006.

Harry J. Fisk, an attorney who was hired according
to Hondo by Hondo=s
parents, appeared at the hearing on the motion to vacate.  Hondo was present at the hearing as was
Stacey.  Burnett was also present as
Stacey=s
attorney.  In his motion, Hondo claimed
that the purported service of citation was defective; that the parties had
never been married; and, among other things, that the temporary orders were
unreasonable.  He also sought sanctions.

Hondo testified at the September 8 hearing.  He testified that he lived in Sierra Vista, Arizona,
but that he had worked as a security technician in Iraq for two and one-half
years.  He used his mother=s address in New Mexico for his mail.  Stacey was aware that he was in Iraq when the papers were served in New Mexico.  Hondo had visited Stacey in Hawley for a few
days in June, went to Arizona and New Mexico, and returned to Iraq on the 17th or 18th of
June.  The day after the citation was
delivered in New Mexico, Hondos=s mother contacted him by telephone in Iraq and told
him, “You got these papers.”  It is
unclear from the record just when Hondo knew the details of “the papers.”  He authorized Fisk to file the various
pleadings on his behalf.

Fisk attempted to call Stacey as a witness, but
the trial court sustained an objection by 
Burnett that it would be Ajust
to harass her.@  The trial court ruled that the question of
whether there was a valid marriage was not an issue at the hearing on the motion
to vacate, but that the question ultimately would be resolved apparently in the
final hearing.  There was no further
testimony. 

The trial court At the conclusion of the hearing,
the trial court said:

I
find that the service was proper. 
Because service was proper we had -- I think that the law allowed us to
have a temporary hearing, which I heard evidence for some period of time on
that August the 3rd, and I ruled according to the evidence presented to me.

 








The Court finds that the Respondent was aware of
the proceedings against him prior to the time of that hearing, and whether or
not he showed up here I -- you know, that=s
up to the Respondent and you, Mr. Fisk. 
And so service was proper in that regard.  And, in that sense, my temporary orders are
going to remain in effect....I expect my orders to be followed, and I=m setting a compliance hearing for next
Friday afternoon at one o=clock.

 

After some scheduling discussions, the “compliance” hearing was
moved to September 15, 2006, and Hondo was ordered to be present unless a “Rule
11 Agreement has been signed by both counsel saying that the order=s been complied with.”

again stated its ruling that it found that service
was proper “according to laws of the State of Texas.” On September 14, 2006, the trial
court entered its written order denying Hondo=s
motion.

The trial court conducted the Acompliance@
hearing as scheduled on September 15. 
Burnett appeared for Stacey. David N. DeFoore, an attorney from Abilene, had joined Fisk
as Hondo=s
attorney; and they both appeared.  There
was no testimony taken at this hearing. 
The trial court asked Burnett what he believed the status to be in
connection with Acompliance
of the orders.@  Burnett informed him, basically, of the ways
in which he claimed that Hondo had failed to comply with the temporary
orders.  DeFoore was given the
opportunity to and did respond.  He
responded that Hondo could not have delivered property to Stacey while he was
in Iraq.  He also advised the trial court that Hondo
was willing to and intended to pay the amounts ordered but that he had only
$1,500, which he was ready to pay at the time.

After a response from
Burnett, the trial court made the following announcement:

At this time, Mr. Hondo, I am finding you in
criminal contempt of court in regards to each specific allegation of failure to
pay the ordered temporary spousal support in the amount of $3500 on August the
7th and September the 7th.

 

I=m
finding that you have specifically violated the Court=s
order in regards to failure to pay the court-ordered retroactive [spousal]
support in the amount of $4,000.

 

I=m
finding you -- that you specifically violated the court order by failing to
voluntarily return the Dodge Ram vehicle.

 

I=m
finding that you specifically violated the court order for failure to return
the trailer.








And I=m
finding that you violated the court order when you failed to follow the Court=s order and enumerate [sic] Mrs. Sloan
$7,500 to Mr. Burnett for court-ordered interim attorney=s
fees.

 

This is a -- you=re
being found in criminal contempt.  I=m sentencing you to 180 days on each
violation.  This sentence will run
concurrently.  Furthermore, I=m making a specific finding that you
were able and capable of complying with the court order.

 

I=m
finding you also in civil contempt, and I=m
ordering that you remain in the confines of the county jail until such time
that you comply with the court order.

 

After informing the parties that it might later
consider Asome type
of probation of this sentence@
if Hondo complied with the order, the trial court ordered a Deputy to Atake him into custody. A 
Later the same day, the trial court entered its written order expanding
on the details of its oral pronouncement.

Hondo presents four issues in support of his
application for writ of habeas corpus. 
First, he argues that service of process was defective.  Secondly, he contends that any notice of
contempt as required by due process, was incomplete and ambiguous in connection
with the Acompliance@ hearing.  Next, Hondo claims that the order holding him
in contempt and committing him to jail is void because he was found in contempt
for actions occurring prior to the time that the trial court entered its written
temporary orders.  Finally, he makes the
complaint that one punishment was assessed for more than one act of contempt
and that one act occurred before the trial court entered its written temporary
orders.

An original habeas corpus proceeding in which an
attack is made upon a contempt judgment is a collateral attack on the
judgment.  In re Mann, 162 S.W.3d
429 (Tex. App.CFort
Worth 2005, orig. proceeding).   Unlike
those appeals challenging default judgments, this is not a direct appeal but is
an original proceeding collaterally challenging Judge Hagler=s orders.  This is an important distinction because in a
direct appeal we do not presume that issuance, service, and return of citation
are valid.  Uvalde Country Club v.
Martin Linen Supply Co., 690 S.W.2d 884 (Tex. 1985). 
We do entertain that presumption when the attack is collateral.  In re Parr, 199 S.W.3d 457 (Tex. App.CHouston [1st Dist.] 2006, orig. proceeding).   








When challenging a contempt order, the burden is
upon the one seeking a writ of habeas corpus to show that the contempt order is
void.  Id. 
We may order Hondo=s
release only if he shows that the order about which he complains is void
because of a lack of jurisdiction or that the trial court  ordered his confinement without affording him
due process. Id.
at 460.  

Jurisdiction consists of two elements:  (1) subject-matter jurisdiction and (2)
personal jurisdiction.  Id.  A court acquires personal jurisdiction
when a person, without legal reservation, voluntarily appears before the court
or when the person is served with process in accordance with required procedures
in accordance with due process.  Id. at
461.  A defendant must be amenable to the
jurisdiction of the court, and that jurisdiction must be invoked by valid
service of process.  Coronado v.
Norman, 111 S.W.3d 838, 841 (Tex. App.CEastland
2003, pet. denied).  At this point, we
are not asked to decide questions regarding subject-matter jurisdiction.

Whether a court has personal jurisdiction in a
particular matter is a question of law.  Coronado, 111
S.W.3d at 838.  The correct standard of
review is do novo.  Id. at 842.

Hondo was not personally served in this case.  Rather, substituted service was attempted by
serving his stepfather in New Mexico.  

A party who seeks to serve another by a means
other than personal service must follow the requirements set out in Tex. R. Civ. P. 106(b).  Rule 106(b) provides:

(b) Upon motion supported by affidavit stating the
location of the defendant=s
usual place of business or usual place of abode or other place where the
defendant can probably be found and stating specifically the facts showing that
service has been attempted under either (a)(1) or (a)(2) at the location named
in such affidavit but has not been successful, the court may authorize service

 

(1) by leaving a true copy of the citation, with a
copy of the petition attached, with anyone over sixteen years of age at the
location specified in such affidavit, or

 

(2) in any other manner that the affidavit or
other evidence before the court shows will be reasonably effective to give the
defendant notice of the suit. 

 

Tex. R.
Civ. P. 106(a)(1) requires personal delivery to a defendant while Tex. R. Civ. P. 106 (a)(2) provides a
process for service by mail.  Neither of
those occurred in this case.








Thus, to obtain substituted service under Rule
106(b), the one seeking such service must file a motion supported by affidavit
showing the location of the defendant=s
usual place of business or usual place of abode (or other place where the
defendant can probably be found).  The
affidavit also must contain statements of fact that show specifically the
unsuccessful attempts at personal or mailed service at the place named in the
affidavit.  Upon a proper showing, the
court may then order substituted service in accordance with Rule 106(b)(1) or
106(b)(2).

An affidavit will not support substituted service
if it is conclusory or otherwise insufficient. 
See Wilson v. Dunn, 800 S.W.2d
833, 836 (Tex.
1990).  The affidavit in this case was
signed by Horton on July 7, 2006.  Horton
stated that he attempted to serve Hondo at 2000 P.R. 316 in Hawley “on three
separate occasions.”  Horton continued, “Hondo
Lance Sloan has been unavailable for service, has refused to appear and has
avoided for service of Original Petition for Divorce.”  There is no mention of service of the
temporary restraining order, the protective order, or a notice of hearing.  Other than Horton=s
statement that he attempted to serve Hondo at 2000 P.R. 316 in Hawley three
times, there is nothing anywhere in the affidavit that detailed his efforts at
service.  He did not state the dates or
the times when the service was attempted and neither did he give any other
details regarding that address as being Hondo=s
usual place of abode.  An unsworn
statement signed by Chief Windham, the Hawley Chief of Police, was attached as
an exhibit to the motion for substituted service.  In that statement, Chief Windham stated that
Hondo had told him that he was in Iraq and that his mother would be
picking up some of his property. 
However, as far as this issue is concerned, we will confine our review
of the affidavit to the contents of the affidavit.  

 This is not
the first time that this court has been presented with this type of affidavit.  In Mackie Construction, the officer
stated in his affidavit that he had made Anumerous
attempts@ to serve
the defendant and that the A[d]efendant
seems to be avoiding service.@  This court held that the affidavit lacked the
specificity required by Tex. R. Civ. P.
106.  The affiant did not state Aspecifically the facts@ surrounding the attempts as required
by the rule.  Mackie Constr. Co. v.
Carpet Servs., Inc., 645 S.W.2d 594, 596 (Tex. App.CEastland
1982, no writ).   Here, the affiant did
not state the times at which he attempted to serve Hondo.  The affidavit does not contain information
that the address named in the affidavit is even Hondo=s
usual place of abode.  Further, as far as
the remainder of the affidavit is concerned, it contains no more than
conclusory language. 








Stacey argues that it matters not about the
imperfections in the affidavit because Hondo voluntarily appeared when he
presented his motion to vacate the temporary order.  Voluntary appearance is not retroactive.  We have not been called upon to decide more
than that at this time.  She also argues
that Hondo had actual knowledge of the proceedings and that any problems with
the service are therefore meaningless. 
Although there might well be multiple problems with notice in this case,
we are not addressing questions relating to notice; we are addressing the
acquisition of personal jurisdiction by appropriate service of process.  That did not happen before the temporary
orders were entered.  In a direct appeal
to set aside a default judgment, actual notice, without service, is not
sufficient to confer jurisdiction upon a trial court. Wilson, 800 S.W.2d at 836.  Although the burden of coming forward with
evidence is different in direct appeals from that in default judgments and in
original proceedings in which a judgment or order is collaterally attacked, we
believe that the effect of actual notice is the same in either case; it does
not confer personal jurisdiction.

It is clear from the cited authorities that, if
service of process is improper and if no voluntary appearances have been made,
then the trial court has no personal jurisdiction and any orders entered by it
are void.  It is equally as clear that
Hondo has met his burden to show that the affidavit in this case falls short of
the bare minimum necessary to the type of personal service that would result in
the acquisition of personal jurisdiction.

Stacey also maintains that a portion of the
confinement assessed against Hondo was in connection with direct attempt as
opposed to constructive contempt.  At the
hearing to vacate the orders of the trial court, Burnett asked Hondo, on
cross-examination, whether he was going to pay the money as ordered.  Perhaps unwisely, Hondo at first stated that
he was not going to pay as ordered because he was not married.  In the same series of questions, Hondo
finally told Burnett,  AI guess I=m
going to have to [pay] because if I don=t,
you=re going to throw me in jail and I=ll lose my job.@  On appeal, Stacey argues that a portion of
the confinement was related to this attitude and various similar statements
made by Hondo and that any problems with service do not affect this portion of
the commitment.  We do not agree.  An examination of Judge Hagler=s order shows that Hondo is being held
in direct contempt for not doing those things ordered in the temporary orders
entered by the trial court, not for things Hondo did or said during the
hearing.








While we are not at all unsympathetic with Hondo=s other claims, in view of our holding
regarding jurisdiction, we need not discuss Hondo=s
being deprived of his liberty without due process of law arising from a lack of
proper notice, as well as for other reasons. 
Nor is it necessary to consider Hondo=s
retroactive contempt claims in which he says that Judge Hagler held him in
contempt and ordered him confined for failure to take certain actions by a date
that had already passed prior to the time that the trial court ordered that he
take those actions.    

Because the affidavit wholly failed to support the
motion for substituted service, the trial court never acquired personal service
over Hondo.  Because they are void, we
set aside the trial court=s
temporary orders in this case, as well as any orders of contempt and commitment
based upon the temporary orders.  Hondo
legally cannot be held in contempt for violating a void order.  Ex parte Shaffer, 649 S.W.2d 300,
301-02 (Tex. 1983); Ex parte Lillard,
314 S.W.2d 800 (Tex.
1958).  We grant Hondo Lance Sloan=s request for a writ of habeas corpus
and order his release from confinement and from all obligations related to his
confinement.

 

 

JIM R. WRIGHT

CHIEF JUSTICE

 

February 8, 2007

Panel
consists of:  Wright, C.J.,

McCall,
J., and Strange, J.