

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-16-00448-CV

---

IN THE INTEREST OF E.D., A
CHILD

----------

FROM THE 90TH DISTRICT COURT OF YOUNG COUNTY
TRIAL COURT NO. 32309

----------

## DISSENTING OPINION

----------

Along with the entire court, I share the majority's articulated concerns about the many errors and irregularities apparent on the face of the record in this appeal and the consequentially suspect result in the trial court's judgment and judgment nunc pro tunc, the latter of which effected an essentially 180-degree change of custody, possession, and access to a child under three years of age, wholly unsupported by any pleading, based on attempted substituted service that was so incredibly defective as to amount to no service at all. But I respectfully dissent to the majority's holding that we do not have jurisdiction over the appeal. I

believe our analysis of the jurisdictional issue should focus on whether Father and the trial court attempted but failed to effect substituted service under rule 109a, instead of deciding that service pursuant to that rule was not authorized because the trial court failed to sign an order containing the recitations required by that rule. By narrowly construing the scope of the remedy available to a party for whom substituted service under rule 109a has been ordered—whether properly or not—the majority denies Mother relief based on *Father's* failure to strictly comply with substituted service requirements and does so when the record as a whole supports Mother's contention that the trial court attempted to order substituted service pursuant to rule 109a. In doing so, the majority's disposition runs contrary to the directive that we are to liberally construe the rules of civil procedure to resolve matters "with as great expedition and dispatch and at the least expense both to the litigants and to the state as may be practicable." Tex. R. Civ. P. 1; *In re Bridgestone Americas Tire Operations, LLC*, 459 S.W.3d 565, 569 (Tex. 2015) (orig. proceeding); *cf. In re J.Z.P.*, 484 S.W.3d 924, 925 (Tex. 2016); *Ryland Enter. v. Weatherspoon*, 355 S.W.3d 664, 665 (Tex. 2011) (repeating well-settled principle that we construe rules of appellate procedure liberally to preserve right of appeal on the merits). Therefore, I disagree with the majority solely on the legal question of whether this court has jurisdiction to consider this attempted direct appeal.

**Errors and Irregularities Apparent From Face of Record**

The majority has accurately set forth many of my concerns with the state of the record in this appeal. But I believe other problems bear recounting.

In the original SAPCR order in which the trial court found that Father had a history or pattern of family violence sufficient to completely deny him access to E.D., the trial court also found that disclosure of the addresses and other identifying information of Mother and the child was "likely to cause *[Mother] or the child* harassment, abuse, serious harm or injury." Thus, the trial court ordered that such information not be disclosed to Father and extended this nondisclosure to "any custodian of records, including, but not limited to judicial clerks, medical offices, and school offices."

Although in his subsequent motion to modify Father alleged that "[t]he circumstances of the child, a conservator, or other party affected by the order to be modified have materially and substantially changed since the date of rendition of the order to be modified," he did not elaborate what those circumstances were. *See* Tex. Fam. Code Ann. § 156.101(a)(1) (West 2014). More importantly, his petition never alerted the court to the previous family-violence finding or explained whether he had purged himself of such history or pattern over the intervening fifteen months.[1] *See id.* § 153.004(d) (West Supp. 2017) (prohibiting

---

[1]Although I could find no authority requiring a party subject to such a finding to include this information in a subsequent motion to modify, it is the type of information that should be addressed in a subsequent SAPCR petition so the trial court has notice that the finding should be considered in determining whether

court from granting custodial access to parent shown by a preponderance of the evidence to have a history or pattern of committing family violence within two years preceding filing of or during pendency of SAPCR). Neither did the trial judge address the finding in the modification order or judgment nunc pro tunc.

There is no docket entry for the day the trial court considered and ruled on the motion for substituted service. And although Father's motion states that the initial service attempts occurred in Olney, Young County—which presumably includes the attempt by the process server in which he made contact with Mother's father—the return of service in the record shows that the process server served Mother's father in Seymour, Baylor County. The man who held himself out as Mother's father could have delivered the modification petition to her anywhere in the world, for all we and the trial court could tell from the pretrial record.

At the time of the entry of the original SAPCR order, E.D. had just turned one. She was not yet three when the trial court rendered the modification order. Nevertheless, nothing in the modification order or judgment nunc pro tunc demonstrated that the trial court considered the statutory factors applicable for possession of a child less than three years of age. *See id.* § 153.254(a) (West

there has been a material and substantial change in circumstances. The absence of any reference to the prior family-violence finding in Father's petition might explain the trial judge's apparent lack of consideration of the finding's effect on Father's inability to effect service, in light of the fact that the trial court had previously ordered that Mother's address was not to be disclosed to Father to prevent child harassment, abuse, serious harm, or injury.

Supp. 2017). Nor did the trial court render a prospective order to take effect on the child's third birthday. *Id.* § 153.254(d) ("The court shall render a prospective order to take effect on the child's third birthday, which presumptively will be the standard possession order.").

The trial court erroneously rendered the judgment nunc pro tunc without any further pleading, motion, or hearing. *See* Tex. R. Civ. P. 316. Because the judgment nunc pro tunc effected a substantive change, and therefore does not qualify as a judgment nunc pro tunc, it is void because it was signed outside the trial court's plenary power. *See Tex. Dep't of Transp. v. A.P.I. Pipe & Supply, LLC*, 397 S.W.3d 162, 168 (Tex. 2013).

Both the modification order and judgment nunc pro tunc list Mother's address as "Unknown." Thus, even after the attempted substituted service, the trial court found that no one knew where to find Mother. Pursuant to the trial court's original SAPCR order, Mother's address was not to be disclosed to any judicial clerks. Yet within twelve days of the entry of the judgment nunc pro tunc, the sheriff's department was able to execute the judgment at Mother's residence, taking E.D. from Mother's possession.

Finally, although Father argued in his response to the motion for new trial that Mother's father delivered the petition to her and that Mother had contacted Father a few days after the original modification order, actual notice will not cure defective service for purposes of conveying personal jurisdiction on the trial court

5

to grant a default judgment. *See Wilson v. Dunn*, 800 S.W.2d 833, 836 (Tex. 1990).

**Father Sought Substituted Service Based on His Inability to Locate Mother**

It is apparent from the face of the record and the context of Father's motion for substituted service that Father sought the type of substituted service authorized by rule 106(b) but for a reason described in rule 109, the publication rule. If Mother had filed a notice of appeal within thirty days of the original modification order, or if she had filed a timely restricted appeal from the original modification order or judgment nunc pro tunc, she would without question be entitled to relief. *See, e.g.*, *id.* at 836–37 (citing *Medford v. Salter*, 747 S.W.2d 519, 520–21 (Tex. App.—Corpus Christi 1988, no writ) (in restricted appeal, construing substance of motion for substituted service that listed and relied solely on rule 109a and reversing default judgment because service was improperly effectuated under either rule 106(b) or rule 109a)); *cf. Ingram Indus., Inc. v. U.S. Bolt Mfg., Inc.*, 121 S.W.3d 31, 35–36 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (holding that service was not defective when heading on citation erroneously referenced rule 106 because rule 99 does not require listing the operable rule or statute on citation itself and service was proper under article 2.11(B) of the Business Corporation Act).

In *J.Z.P.*, an appeal involving strikingly similar circumstances as this appeal, the Texas Supreme Court considered whether a document entitled "Motion to Reopen and to Vacate Order," filed by the mother after the trial court's

6

plenary jurisdiction had expired, should be construed as a rule 306a motion. 484 S.W.3d at 925; *see* Tex. R. Civ. P. 306a(4), (5) (outlining procedure for obtaining additional time to file postjudgment motion or appeal when adversely affected party or attorney does not receive notice of judgment within twenty days after it is signed). The court of appeals had held that the motion did not extend the trial court's plenary jurisdiction and postjudgment deadlines because it was not captioned as a rule 306a motion. *Id.* The supreme court held that the court of appeals erred in its holding because "courts should acknowledge the substance of the relief sought despite the formal styling of the pleading," and the mother's pleading "plainly requested relief from the trial court's order on the grounds that she had not been served with citation and had not learned of the trial court's order until a few days before her motion was filed." *Id.* Accordingly, the supreme court determined whether rule 306a applied to extend postjudgment and appellate deadlines by construing the substance of the mother's request for relief. *Id.* It further held that "[j]ustice plainly required the trial court and court of appeals to treat [the mother's] motion as extending post-judgment deadlines." *Id.*

Here, the body of Father's "Motion For Substituted Service"[2] reads as follows:

---

[2]I have omitted the listing of the parties' names.

## II.
## GROUNDS

Service of citation on Respondent has been attempted by personally delivering it to the Respondent at her last known address in Olney, Young County, Texas, but these attempts at service have not been successful as shown by the attached affidavit.

## III.
## FACTS

Personal Service has been attempted on multiple occasions by Matt Pruitt with no success. Mr Pruitt has been provided phone numbers of the Respondent by the Respondent's father . . . , but no one responds to the calls. Despite his diligent efforts, Mr. Pruitt has been unable to locate the Respondent so that personal service can be perfected on the Respondent.

## IV.
## REQUESTED METHOD OF SERVICE

As authorized by Rule 106(b) of the Texas Rules of Civil Procedure, service on the Respondent . . . should be made by delivering a copy of the Citation, along with a copy of the Motion to Modify filed herein by [Father], with the Respondent's father . . . .

## V.
## PRAYER

Movant . . . hereby prays that the Court direct that Citation be served on the Respondent . . . in the manner described above.

The body of the process server's attached affidavit reads as follows:

Citation for the Respondent . . . in this cause was delivered to me by the Petitioner's attorney, Stephen O. Crawford, on January 27, 2016. I have attempted personal service on the Respondent at 4:30 p.m. on January 28, 2016 and such service was not successful. I attempted personal service once again on February 1, 2016 and again was unsuccessful. Service was attempted once again on February 3, 2016. At that time, I was able to make contact with a [name deleted] who represented that he was the father of [Mother]. He gave me an address and phone number

8

for [Mother] but both were found not to still be accurate. [Mother's father] indicated that if I were to leave the papers with him, that he could make sure that [Mother] received them. He indicated that he had regular contact with [Mother]. I feel that by serving the Citation with a copy of the Motion to Modify attached on [Mother's father], that the Respondent . . . would receive actual and timely notice of this cause.[3]

We must consider the substance of the relief requested in Father's motion in light of the affidavit setting forth why substituted service was necessary. *See* Tex. R. Civ. P. 106(b), 109; *cf. J.Z.P.*, 484 S.W.3d at 925. Although Father indicated in his motion that he sought service via the *method* authorized by rule 106(b), he also plainly asserted as a fact supporting service by that method that "[d]espite his diligent efforts, Mr. Pruitt [the process server] ha[d] been unable to locate" Mother. In his affidavit, Pruitt does not indicate that when he encountered Mother's father at the place he had been attempting service, Mother's father affirmed the location was Mother's residence. Instead, Pruitt states that Mother's father gave him another address and a phone number but that those proved to be inaccurate. Thus, nothing in Father's motion or the attached affidavit shows that Mother's address or location was known to the process server, Father, or Father's attorney. And the trial court's original SAPCR order prohibited the

---

[3]The process server failed to explain why he was confident that serving the citation and motion to modify on Mother's father would ensure that Mother would receive actual and timely notice even after Mother's father had provided him with an incorrect address and phone number for Mother.

9

disclosure of Mother's address to Father.[4]  The trial court's order authorizing service of Mother via her father does not identify the rule authorizing the substituted service ordered, but merely finds that Father attempted personal service unsuccessfully and that "[t]he manner of service ordered"—delivery to Mother's father—"will be reasonably effective in giving [Mother] notice of this suit."

Whether the motion and affidavit sought substituted service at a known or unknown location is important to determining under which rule Father was attempting to proceed.  Rule 106(b)(2) allows for substituted service "[u]pon motion supported by affidavit stating the location of the defendant's usual place of business or usual place of abode or other place where the defendant can

---

[4]In his Response to Mother's Motion to Set Aside Default Judgment and Motion for New Trial, Father blames Mother for his inability to obtain personal service, conceding that her residence was unknown to him when he requested substituted service.  In making this argument, Father further expressly argued that Mother "failed to include her required information – including her address and phone number – as required by Section 105 of the Texas Family Code in the Order in Suit Affecting the Parent-Child Relationship, nor did she continue to update [him] and/or the Court of her new address and con[t]act information, as required pursuant to Texas Family Code Section 105.006 (specifically 105.006(a)(2)[)]."  Incredibly, Father then categorically misrepresented that "[t]here was no finding by the Court (after notice and hearing) that the information would cause [Mother] harassment, abuse, serious harm, or injury, to allow that the information not be disclosed or included in the Final Order."

The only duty Mother owed was to make sure the State Case Registry had current information on her and the child, including their residence.  Under the circumstances, the residence and identifying information of Mother was to be "unknown" to Father as a matter of law under the original SAPCR order.  Even if the trial court or district clerk knew the current address of Mother, neither could disclose that information to Father for purposes of obtaining service of citation of a suit to modify.

10

probably be found and stating specifically the facts showing that service has been attempted" by delivering it to the defendant in person or mailing it by registered or certified mail, return receipt requested, "at the location named in such affidavit." Tex. R. Civ. P. 106(b). Upon a showing that such attempted service was unsuccessful at that location, the rule outlines one of two methods for substituted service:

> (1) by leaving a true copy of the citation, with a copy of the petition attached, with anyone over sixteen years of age at the location specified in such affidavit, or

> (2) in any other manner that the affidavit or other evidence before the court shows will be reasonably effective to give the defendant notice of the suit.

*Id.* Thus, rule 106(b) prescribes a way of effecting substituted service when a process server is unable to serve a defendant at a known, named location. *See In re C.L.W.*, 485 S.W.3d 537, 541 (Tex. App.—San Antonio 2015, no pet.); *Garrells v. Wales Transp., Inc.*, 706 S.W.2d 757, 759 (Tex. App.—Dallas 1986, no writ) ("We hold that before the trial judge orders substituted service under rule 106, there must be evidence of probative value that the location stated in the affidavit is the defendant's usual place of business or usual place of abode or other place where the defendant can probably be found.").

Neither the motion nor the affidavit identifies Mother's usual place of business or abode or other place where she could probably be found. Thus, substituted service was not "authorized" under rule 106(b).

11

In contrast, rules 109 and 109a allow substituted service when the defendant's location is unknown. Tex. R. Civ. P. 109, 109a; *cf. Dean v. Hall*, No. 03-10-00090-CV, 2010 WL 5463933, at *2 (Tex. App.—Austin Dec. 31, 2010, no pet.) (mem. op.); *see* Tex. Fam. Code Ann. § 102.010 (West 2014) (providing for service by publication in family law cases). Rule 109 provides as follows:

> When a party to a suit, his agent or attorney, *shall make oath that the residence of any party defendant is unknown to affiant*, . . . *and that after due diligence such party and the affiant have been unable to locate the whereabouts of such defendant*, . . . the clerk shall issue citation for such defendant for service by publication. In such cases it shall be the duty of the court trying the case to inquire into the sufficiency of the diligence exercised in attempting to ascertain the residence or whereabouts of the defendant or to obtain service of nonresident notice, as the case may be, before granting any judgment on such service.

Tex. R. Civ. P 109 (emphasis added).

Here, Father's motion asserted that even though Pruitt had attempted to serve Mother at her last known address, he had nevertheless been unable to locate her "[d]espite his diligent efforts." This is an almost word-for-word quotation of rule 109. Additionally, Pruitt never averred that the location at which he located Mother's father was in fact Mother's last known address, and he represented that the address and phone number Mother's father gave him were incorrect. Reading the affidavit in its entirety, it is clear that Pruitt averred that substituted service was necessary because he did not know where to find Mother even if he did not expressly state those words. And, again, the trial court's own

12

file containing the original SAPCR order shows that Mother's location was intended to be unknown to *Father*.

Rule 109a allows the trial court to fashion a method of substituted service other than publication "[w]henever citation by publication is authorized." Tex. R. Civ. P. 109a. The majority concludes that this quoted language means that Father could not have attempted, and the trial court could not have ordered, service under rule 109a because (1) the trial court's order did not include a recitation that the substituted method of service "would be as likely as publication to give defendant actual notice" and (2) Pruitt's affidavit does not aver that Mother's address was unknown to Father. Maj. Op. at 11. But the plain language of rule 109 "authorizes" citation by publication when, among other things, a party, his agent, or attorney swears that the defendant's location is unknown to the affiant and the party and despite diligent efforts, he or she cannot locate the defendant. Father clearly proffered the affidavit of the process server as his agent for purposes of establishing the facts necessary to obtain alternate service under rule 109. *See Sgitovich v. Sgitovich*, 241 S.W.2d 142, 147–48 (Tex. 1951) (analyzing whether service was proper under rule 109—upon affidavits of two persons with whom server left citation that they did not know where to locate appellant and affidavit of former attorney that did not say whether or not attorney knew appellant's location—in light of whether facts in affidavit were true, stating, "It is not the making of the affidavit, *but the truth of it, that is, the existence in fact of the assumed condition*, which enables the court to acquire

13

jurisdiction over the person of the defendant by publication." (emphasis added)), *cert. denied*, 342 U.S. 903 (1952). That neither Father nor the trial court ensured a proper order was signed does not change that *rule 109*—which by its language does not require such a recitation—*authorized* service by publication upon these facts because of the requisite sworn representation that Mother's location was unknown despite diligent efforts to locate her and effectuate service. It is Father's seeking of and attempt to effect such service based on his inability to locate Mother because he did not (and by order could not) know her address—a permitted reason for seeking service under rules 109 and 109a—that makes rule 329(a) applicable to extend the trial court's plenary power and the appellate deadlines so that we may properly address the merits of Mother's appeal in this case.

And, contrary to the majority's conclusion that the trial court's April 29, 2016 docket entry is irrelevant to the jurisdictional analysis, that docket entry is consistent with a conclusion that the trial court attempted, but failed, to properly effectuate service under rules 109 and 109a. It is also consistent with the trial court's duty to inquire into the sufficiency of the diligence exercised in attempting to ascertain Mother's whereabouts, a duty not imposed on the trial court by rule 106(b). Tex. R. Civ. P. 106(b), 109, 109a; *see In re A.Y.*, 16 S.W.3d 387, 389 (Tex. App.—El Paso 2000, no pet.).

Thus, mindful of the Supreme Court's admonition in *J.Z.P.* that Texas courts should look to the substance of the relief sought, not the form of the plea

14

or pleading, the record as a whole shows that Father sought, and the trial court granted, substituted service on the theory that Mother's location was unknown to Father, not that the process server was unable to effectuate service at Mother's usual place of abode or other location where she could probably be found. *See Surgitek, Bristol-Myers Corp. v. Abel*, 997 S.W.2d 598, 601 (Tex. 1999) (adopting functional approach to determining appealability of venue ruling based on joinder decision). For that reason, I would hold—*based solely on the specific facts of this case*—that the extended timetable in rule 329(a) applies because Father sought and was authorized to seek service under rule 109 and requested under rule 109a a method of service listed as permissible in rule 106(b). I do not believe this court should hold Father's and the trial court's errors in effecting that substituted service against Mother as the defaulting party when the record must show that *Father* strictly complied with the rules regarding service to support his default judgment. *See Wilson*, 800 S.W.2d at 836. Moreover, although Mother may have a remedy through an equitable bill of review, advising her to seek such a remedy at this point—almost two years after entry of the clearly erroneous judgment nunc pro tunc—would result in a further delay of the resolution of a matter that the law demands be handled expeditiously.[5] *See* Tex. R. Civ. P. 1;

---

[5]Mother was represented in post-trial matters by a Legal Aid attorney. I doubt I need to recount here the inherent difficulties that those attorneys and litigants often face due to a lack of adequate funding and resources. *Cf. Herrera v. Rivera*, 281 S.W.3d 1, 8 (Tex. App.—El Paso 2005, no pet.) (concluding that Herrera showed reasonable excuse for delay preventing dismissal for want of prosecution by presenting evidence that Legal Aid office suffered from a high

*In re Tex. Dep't of Family & Protective Servs.*, 210 S.W.3d 609, 613 (Tex. 2006) (orig. proceeding) (op. on reh'g) (noting that in child custody cases "[j]ustice demands a speedy resolution" and granting mandamus relief even though notice of appeal had been filed and issue could have been presented in pending appeal as a remedy but it would have been inadequate).

## Conclusion

Because the record as a whole shows that Father sought and obtained substituted service on Mother under rule 109a based on a theory that her location was unknown to him—and because Father's failure to properly effect, and the trial court's failure to properly order, service under that rule or any other cannot cure the many egregious errors in this record—I dissent to the majority's opinion holding that Father's and the trial court's errors constitute a jurisdictional bar to Mother's appeal.[6]  I would consider the appeal on its merits, hold that the

---

turnover of attorneys, that at least five attorneys had worked on her case, and that even after agency lost contact with Herrera, it still diligently attempted to contact her).

[6]I fully appreciate that a fair and even-handed application of the law often yields results that appear to be unfair.  Here, however, the construction of the law and rules that I advocate does not reward a litigant for sitting on her rights until it is too late.  Rather, as in all alleged-lack-of-service cases—in which due process rights are implicated—it places the onus to document and effect service on the party upon whom the law rightfully places that high burden.  *See, e.g., Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 84, 108 S. Ct. 896, 899 (1988) (holding that the failure to give notice is a violation of "the most rudimentary demands of due process of law" which must be remedied by allowing the party deprived of notice a new trial, regardless of the merits of that party's defense).  Mother alleged and swore in her motion for new trial that she "never received service in this case."

trial court erred by failing to grant Mother's motion for new trial, reverse the trial court's modification order and judgment nunc pro tunc, and remand for a new trial. *See In re E.R.*, 385 S.W.3d 552, 563, 566 (Tex. 2012) (noting that "if service was invalid, a party is entitled to a new trial without showing good cause" and that "[a] complete failure of service deprives a litigant of due process and a trial court of personal jurisdiction; the resulting judgment is void and may be challenged at any time").

/s/ Wade Birdwell

WADE BIRDWELL
JUSTICE

MEIER and GABRIEL, JJ., join.

DELIVERED:  May 24, 2018