**REVERSE AND REMAND and Opinion Filed November 29, 2021**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

---

### No. 05-19-01480-CV

---

## PRO-FIRE & SPRINKLER, L.L.C. AND JAMES C. LANKFORD,
**Appellants**
**V.**
## THE LAW COMPANY, INC., Appellee

---

**On Appeal from the 95th District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-18-18762**

---

## OPINION

Before Justices Myers, Osborne, and Carlyle
Opinion by Justice Osborne

In this restricted appeal, appellants Pro-Fire & Sprinkler, L.L.C. and James C.

Lankford challenge the trial court's default judgment in favor of appellee The Law

Company, Inc. (TLC). In a single issue with four parts, Pro-Fire and Lankford claim

that there is error apparent on the face of the record that requires reversal. We agree

and reverse the trial court's default judgment.

## BACKGROUND

The suit arises from an alleged subcontract between Pro-Fire and TLC relating

to a construction project in which TLC was the general contractor; Lankford

allegedly guaranteed Pro-Fire's performance on the contract. In 2018, TLC filed suit against Pro-Fire for breach of contract and against Lankford for his liability under the guaranty.

In January 2019, after four unsuccessful attempts to serve appellants, TLC filed a motion requesting substituted service on Pro-Fire and a separate motion requesting substituted service on Lankford.[1] The trial court denied the motions; a few days later, TLC filed amended motions attaching a new affidavit from its process server with additional detail, including statements confirming that the address at issue was Lankford's residence based on the process server's conversations with Lankford's wife at the address.

The trial court subsequently signed an order authorizing substituted service on Lankford. The trial court's order required the process server to attempt personal service on anyone over the age of sixteen at Lankford's residence before leaving a copy of the citation and original petition attached to the front door:

> [I]t is ordered . . . that service upon Defendant, JAMES C. LANKFORD, be made by a person authorized by law to serve process by delivering a true copy of the Citation and Plaintiff's Original Petition to anyone over sixteen years of age at the Defendant's usual place of abode, [Lankford's residence], or **in the event no one over sixteen is present when service is attempted,** by attaching copies of the Citation and Plaintiff's Original Petition to the front door at [Lankford's residence].
>
> IT IS FURTHER ORDERED that the return of service on the Citation and Plaintiff's Original Petition state when and how the

---

[1] TLC asserted that although Pro-Fire is an LLC, Pro-Fire does not maintain a registered agent and office in Texas and could be served through its manager, Lankford, at his residence.

Citation and Plaintiff's Original Petition were served, and be signed and sworn to by the person making the return of service.

The return of service relating to Lankford was filed February 5, 2019.[2] In the affidavit of service attached to the return, the process server testified:

"The following came to hand on Jan 29, 2019, 4:00 pm,

CITATION, PLAINTIFF'S ORIGINAL PETITION, AND ORDER FOR SUBSTITUTED SERVICE,

and was executed at 1165 BRENT AVE, TERRELL, TX 75160 within the county of KAUFMAN at 12:55 PM on Fri, Feb 01 2019, by delivering a true copy to the within named

JAMES C. LANKFORD, BY ATTACHING A TRUE COPY OF THE CITATION AND PLAINTIFF'S ORIGINAL PETITION TO THE FRONT DOOR AT 1165 BRENT AVENUE, TERRELL, TEXAS 75160, PURSUANT THE ORDER FOR SUBSTITUTED SERVICE

in person, having first endorsed the date of delivery on same.

I am a person over eighteen (18) years of age and I am competent to make this affidavit. I am a resident of the State of Texas. I am familiar with the Texas Rules of Civil Procedure as they apply to service of Process. I am not a party to this suit nor related or affiliated with any herein, and have no interest in the outcome of the suit. I have never been convicted of a felony or of a misdemeanor involving moral turpitude. I have personal knowledge of the facts stated herein and they are true and correct."

In March 2019, after a hearing, the trial court signed an order authorizing substituted service on Pro-Fire in the manner of securing a copy of the citation and original petition to the front door of Lankford's residence; the trial court's order did not first require an attempt at personal service on anyone over age sixteen. The trial court stated, in relevant part:

[T]he Court GRANTS the motion and authorizes substituted service on Defendant Pro-Fire & Sprinkler, LLC by securing a copy of the citation and Original Petition to the front door of James C. Lankford's, the

---

[2] In late February 2019, TLC filed a First Amended Petition that was essentially identical to its Original Petition, but it added a request to serve Pro-Fire through the Texas Secretary of State and alleged that Lankford had been served "by attaching a true and correct copy of the citation and Plaintiff's Original Petition to the front door at [Lankford's residence]." Although the record reflects that a new citation was issued for service through the Texas Secretary of State, the record reflects that it remained unserved.

Manager of Defendant Pro-Fire & Sprinkler, LLC, residence located at [Lankford's residence].

The return of service relating to Pro-Fire was filed April 26, 2019. In the affidavit of service attached to the return, the process server testified:

"The following came to hand on Dec 26, 2018, 10:35 am,

CITATION, PLAINTIFF'S ORIGINAL PETITION AND ORDER ON PLAINTIFF'S MOTION FOR SUBSTITUTED SERVICE ON DEFENDANT PRO-FIRE & SPRINKLER, LLC.

and was executed at 1165 BRENT AVE, TERRELL, TX 75160 within the county of KAUFMAN at 09:40 AM on Thu, Apr 25 2019, by delivering a true copy to the within named

PRO-FIRE AND SPRINKLER, LLC., BY SECURING A COPY OF THE CITATION AND ORIGINAL PETITION TO THE FRONT DOOR OF JAMES C. LANKFORD'S, THE MANAGER OF DEFENDANT PRO-FIRE & SPRINKLER, LLC, RESIDENCE LOCATED AT 1165 BRENT AVENUE, TERRELL, TEXAS 75160, PER THE ORDER ON PLAINTIFF'S MOTION FOR SUBSTITUTED SERVICE ON DEFENDANT PRO-FIRE & SPRINKLER, LLC,

in person, having first endorsed the date of delivery on same.

I am a person over eighteen(18) years of age and I am competent to make this affidavit. I am a resident of the State of Texas. I am familiar with the Texas Rules of Civil Procedure as they apply to service of Process. I am not a party to this suit nor related or affiliated with any herein, and have no interest in the outcome of the suit. I have never been convicted of a felony or of a misdemeanor involving moral turpitude. I have personal knowledge of the facts stated herein and they are true and correct."

On May 31, 2019, without a hearing, the trial court signed a Final Default Judgment against Pro-Fire and Lankford, jointly and severally, in the amount of $115,314.95 (including principal, attorney's fees, court costs and expenses, and prejudgment interest) plus additional attorney's fees in the event of a motion for new trial or unsuccessful appeal to the court of appeals or Supreme Court of Texas. This restricted appeal followed.

## DISCUSSION

To prevail on a restricted appeal, the appellant must establish four elements: (1) it filed the appeal within six months after judgment was signed; (2) it was a party to the lawsuit; (3) it did not participate in the hearing that resulted in the judgment

complained of, and it did not timely file any postjudgment motions or requests for findings of fact and conclusions of law; and (4) error is apparent on the face of the record. *Pike-Grant v. Grant*, 447 S.W.3d 884, 886 (Tex. 2014) (per curiam); *see also* TEX. R. APP. P. 26.1(c), 30. In this restricted appeal, elements one through three are established in the record. The parties dispute only the fourth element—whether error is apparent on the face of the record.

In a single issue, Pro-Fire and Lankford argue that error is apparent on the face of the record for four reasons: (1) the order for substituted service on Lankford required the process server to check if someone over sixteen was home before taping the citation and petition to the door, but she did not do so; (2) the affidavits of service on Pro-Fire and Lankford are inherently inconsistent because the affidavits say that the appellants were served both by securing the citation to the front door and by delivery in person; (3) the judgment calculates prejudgment interest from the date a statement of claim letter was mailed, but the correct commencement date under § 304.104 of the Texas Finance Code is when the suit was filed; and (4) the evidence of attorney's fees was insufficient to support the attorney's fees award. Because our resolutions of the first two parts of appellants' sole issue are dispositive, we need not address parts three and four. *See* TEX. R. APP. P. 47.1.

**A.** **Error is apparent on the face of the record with respect to service on Lankford because the record does not affirmatively demonstrate strict compliance with the rules governing service.**

In the first part of their sole issue, appellants contend that there is error on the face of the record with respect to service on Lankford. This part focuses on the trial court's instructions in its rule 106 order regarding when it authorized service by posting to the front door and whether the record affirmatively demonstrates those conditions existed when service was made in that manner.

Specifically, when the trial court authorized substituted service on Lankford, it expressed a preference for personal service on anyone over age sixteen at Lankford's residence: The trial court authorized service in the manner of attaching the citation and original petition to the front door of Lankford's residence—and it emphasized this point in bold font—only "**in the event no one over sixteen is present when service is attempted**." The process server testified in her affidavit of service that she attached the citation and original petition to the front door of Lankford's residence; she did not, however, state whether anyone was present when she attempted service.

In appellants' view, the record does not show strict compliance with the trial court's instructions because the process server's affidavit does not state that no one

over sixteen was present when she posted the citation and petition to the front door.[3]

We agree.

### 1. Texas law requires strict compliance with the rules governing service to affirmatively appear in the record.

No-answer default judgments are disfavored, and a trial court lacks jurisdiction over a defendant who was not properly served with process. *Spanton v. Bellah*, 612 S.W.3d 314, 316 (Tex. 2020) (per curiam). "In a restricted appeal, defective service of process constitutes error apparent on the face of the record." *Dolly v. Aethos Commc'ns Sys., Inc.*, 10 S.W.3d 384, 388 (Tex. App.—Dallas 2000, no pet.) (citing *Primate Constr., Inc. v. Silver*, 884 S.W.2d 151, 153 (Tex. 1994) (per curiam)).

It is well established that "a no-answer default judgment cannot stand when the defendant 'was not served in strict compliance with applicable requirements.'" *Spanton*, 612 S.W.3d at 316 (quoting *Wilson v. Dunn*, 800 S.W.2d 833, 836 (Tex. 1990)); *see also Hubicki v. Festina*, 226 S.W.3d 405, 408 (Tex. 2007) (per curiam) ("[E]ven if a defendant has received actual notice of a pending lawsuit, a default judgment rendered upon defective service will not stand."). The Supreme Court of Texas has reiterated that it construes "'strict compliance' to mean just that." *Spanton*,

---

[3] Although appellants frame this part of their issue by stating that the process server failed to determine if anyone over sixteen was present, their brief sets forth the applicable law requiring strict compliance with the rules governing service to affirmatively appear on the face of the record. Thus, we construe appellants' brief liberally as fairly raising the issue of whether strict compliance with the trial court's order for substituted service affirmatively appears on the record. *See* TEX. R. APP. P. 38.1(f).

–7–

612 S.W.3d at 316. Consequently, we indulge no presumptions, even reasonable ones, in favor of valid issuance, service, or return of citation. *See id.* at 316, 318; *see also Primate Constr.*, 884 S.W.2d at 152. "Service of process that does not strictly comply with the rules' requirements is 'invalid and of no effect.'" *Spanton*, 612 S.W.3d at 317 (quoting *Uvalde Country Club v. Martin Linen Supply Co., Inc.*, 690 S.W.2d 884, 885 (Tex. 1985) (per curiam)).

"When a trial court orders substituted service pursuant to rule 106, the only authority for the substituted service is the order itself."[4] *Id.* (quoting *Dolly*, 10 S.W.3d at 388). If the manner prescribed is not followed, then service is accomplished in a manner not authorized by the judge. *Id.* at 318. "[T]he requirements set forth in the order [granting substituted service] must be strictly followed." *Daigrepont v. Preuss*, No. 05-18-01271-CV, 2019 WL 2150916, at *2 (Tex. App.—Dallas May 17, 2019, no pet.) (mem. op.). "Any deviation from the trial court's order authorizing substituted service necessitates a reversal of the default judgment based on service." *Id.*

Strict compliance with the rules governing service of process must affirmatively appear on the record for a default judgment to withstand direct attack. *Primate Constr.*, 884 S.W.2d at 152. It is the responsibility of the one requesting service, not the process server, to see that service is properly accomplished. *Id.* at

---

[4] Texas Rule of Civil Procedure 106 was amended in August 2020, effective December 31, 2020. All references herein to rule 106 are to the version in effect prior to the 2020 amendment.

153 (citing TEX. R. CIV. P. 99(a)). This responsibility extends to seeing that service is properly reflected in the record. *Id*. If the facts as recited in the return, pre-printed or otherwise, are incorrect and do not show proper service, then the one requesting service must seek to amend the return prior to judgment. *See id*.; *see also* TEX. R. CIV. P. 118.

Whether service was in strict compliance with the rules is a question of law that we review de novo. *Daigrepont*, 2019 WL 2150916, at *3.

### 2. The record does not affirmatively demonstrate that no one over the age of sixteen was present when service was made by posting to the front door of Lankford's residence.

The rule 106 order authorized TLC to serve Lankford in the manner of posting service to the front door of his residence only "**in the event no one over sixteen is present when service is attempted**." Thus, we must ascertain whether the record affirmatively reflects that TLC strictly followed the trial court's instructions regarding the manner of service authorized in the rule 106 order. *See Spanton*, 612 S.W.3d at 317; *Daigrepont*, 2019 WL 2150916, at *2; *Dolly*, 10 S.W.3d at 388. We conclude that it does not.

The affidavit affirmatively shows that the citation and petition were attached to the door, but the affidavit contains no explicit statement that no one over the age of sixteen was present when this occurred.[5] There is nothing in the record

---

[5] As discussed below, the affidavit of service also states that service was "in person," making the return inherently inconsistent and service defective for this additional, alternative reason.

affirmatively demonstrating that no one over the age of sixteen was present when service was effected by posting to the front door. The absence of such information from the record prevents this Court from being able to determine whether service was effected in a manner authorized by the trial court. Thus, the record does not affirmatively demonstrate strict compliance with the rules governing service, and the service on Lankford is invalid. *See Primate Constr.*, 884 S.W.2d at 152–53; *Dolly*, 10 S.W.3d at 388–89.

3. **We may not presume that no one over sixteen was present when service was made by posting to the front door of Lankford's residence in order to uphold the no-answer default judgment.**

TLC argues that we may essentially infer that the process server followed the trial court's instructions because her affidavit states that service was made "PURSUANT TO THE ORDER FOR SUBSTITUTED SERVICE." To support its position, TLC cites *Norton v. Lucio*, No. 03-03-00074-CV, 2003 WL 21402021, at *3 (Tex. App.—Austin June 19, 2003, pet. denied) (mem. op.), and *Patel v. Park Plaza Hospital*, 866 S.W.2d 645, 646 (Tex. App.—Houston [1st Dist.] 1993, writ denied) (op. on reh'g). In those cases, the courts held that a verification in a return stating that service was made pursuant to a rule 106 order confirmed that the process was served according to the trial court's instructions. We decline to follow *Norton* and *Patel* because they are contrary to the binding authority of the Supreme Court of Texas and of this Court in two ways.

First, this Court has held that a statement in an affidavit to the effect that a citation was served pursuant to a trial court's order "is a mere legal conclusion that, by itself, does not substantiate proper service." *Dolly*, 10 S.W.3d at 389.

Second, the Supreme Court of Texas has made it clear that appellate courts may not make presumptions, no matter how reasonable, to uphold a no-answer default judgment. *See Spanton*, 612 S.W.3d at 318. For example, in *Spanton*, a rule 106 order authorized substituted service at a specified house number on "Heathers Hill," but the process server stated in his return that he had executed substituted service at the specified house number on "Heather Hills Drive." *Id.* at 316. The address discrepancy prevented any implication or presumption of proper service. *Id.* at 318. The Supreme Court of Texas explained that nothing in the record demonstrated that Heather Hills Drive and Heathers Hill Drive were the same street, and "[w]hile one might ***reasonably presume or believe*** that to be true, we cannot entertain such presumptions or beliefs to uphold a default judgment based on substitute service." *Id.* (emphasis added).

Similarly, in the instant case, the record contains no information affirmatively showing that no one over the age of sixteen was present when service was effected by posting to the front door. We cannot entertain any inference that the process server was aware of and followed the trial court's instructions regarding the presence of anyone over age sixteen when she posted the citation and petition to the front door of Lankford's residence, even if such inferences are reasonable. *See id.*; *see also*

–11–

*Allodial Ltd. P'ship v. Susan Barilich, P.C.*, 184 S.W.3d 405, 408 (Tex. App.—Dallas 2006, no pet.) ("We do not indulge in any presumptions in favor of valid issuance, service, or return of citation. . . . We also do not make inferences of jurisdictional facts." (internal citations omitted)). As this Court has stated,

> Although the strict compliance requirements sometimes lead the courts to rather weird conclusions, preventing us from making even the most obvious and rational inferences, we believe good public policy favors the standard. The end effect of our application of the strict compliance standard is an increased opportunity for trial on the merits. This policy justifies what may at first blush seem a hyper-technical rule.

*Daigrepont*, 2019 WL 2150916, at *4 (quotation marks, brackets, and citation omitted); *see also In re R.E.C.*, No. 05-14-01003-CV, 2015 WL 2205654, at *2 (Tex. App.—Dallas May 12, 2015, no pet.) (mem. op.) (holding that record did not affirmatively reflect service in compliance with rule 106 order when the return referenced "[p]osting on the front door per Order on Motion for Alternative Service Rule 106" and did not state what documents were posted).

Accordingly, we may not infer that no one over sixteen was present when service was made by posting to the front door of Lankford's residence from the process server's statement that service was made "PURSUANT TO THE ORDER FOR SUBSTITUTED SERVICE."

**4.      A return may contain all information required by the trial court but nonetheless fail to affirmatively show that the manner of service proven was authorized by the rule 106 order.**

TLC argues that the affidavit of service did not need to include an express recitation that no one over sixteen was present because the rule 106 order did not

expressly require that information. TLC cites Texas Rule of Civil Procedure 107(f), which states: "Where citation is executed by an alternative method as authorized by Rule 106, proof of service shall be made in the manner ordered by the court." TEX. R. CIV. P. 107(f). TLC contends that the rule 106 order required the return to state only "when and how" the citation and original petition were served; in TLC's view, the affidavit "strictly complie[d]" with those instructions.

TLC's argument is contrary to our prior decision in *Dolly*, which is binding on this Court. In that case, the trial court authorized substituted service on a defendant by leaving the citation, petition, and rule 106 order with anyone over age sixteen at a specified address or, alternatively, by attaching the citation, petition, and rule 106 order to the door of the same address. 10 S.W.3d at 386. The trial court's rule 106 order then required the return to "state when and how the ***citation*** was served" and did not expressly require the return to state when and how ***the rule 106 order or petition*** were served. *Id.* (emphasis added). The return filed by the process server referred to service of the citation and the petition, but it did not refer to service of the rule 106 order. *Id.* at 387.

In a restricted appeal, the defendant argued, *inter alia*, that the return failed to show that the process server served a copy of the rule 106 order as required by the trial court's order. *Id.* In response, the plaintiff argued that service was valid despite the omission of any reference to the rule 106 order in the return "because the court's order provided that the return of service 'shall state when and how [only] the *citation*

was served,' [arguing that the rule 106 order] did not require detail as to when and how the petition and [rule 106] order were served." *Id.*

We concluded that the return was defective. We cited case law holding that there is no authority for substituted service except upon the terms and conditions stated by the judge in his order. *See id.* at 389 (citing *Becker v. Russell*, 765 S.W.2d 899, 900 (Tex. App.—Austin 1989, no writ), and *Broussard v. Davila*, 352 S.W.2d 753, 754 (Tex. App.—San Antonio 1961, no writ)). Based on this authority, we explained,

> Although the citation and petition are mentioned, the return is also devoid of any statement demonstrating that [the defendant] was served with a copy of the order as prescribed by the order. Without such **explicit recitations**, it is impossible to determine whether the citation was in fact served pursuant to the rules of civil procedure and the trial court's order.

*Id*. at 388–89 (emphasis added).

Thus, rule 107(f) authorizes a trial court to specify the manner of proof of service when a trial court authorizes substituted service under rule 106. *See* TEX. R. CIV. P. 107(f). But whether a return complies with such instructions is not necessarily dispositive of whether the manner of service proven in the return was actually authorized by the rule 106 order and rules of civil procedure. A return can both (1) comply with the portion of an order requiring the return to state "when and how" service was effected and (2) fail to demonstrate that "when and how" a defendant was served was in a manner authorized by the trial court. For example, if the process server had stated that she had posted the citation, petition, and rule 106

order to a window on a vehicle parked in front of Lankford's residence on a specified date and time, then the return would have stated "when and how" Lankford was served, but it would not have demonstrated that Lankford was served in a manner authorized by the trial court.

Again, no-answer default judgments are disfavored, *Spanton*, 612 S.W.3d at 316, and it is the plaintiff's burden to ensure that the record affirmatively demonstrates strict compliance with the rules governing service, *Primate Constr.*, 884 S.W.2d at 152–53. Just like in *Dolly*, it is impossible for this Court to determine whether service was effected in a manner authorized by the trial court's rule 106 order and the rules of civil procedure without any explicit recitation in the affidavit of service about the presence of anyone over sixteen when was service was made by posting to the front door.

TLC argues that *Dolly* is distinguishable because the return in *Dolly* contained an "abundance of errors" that prevented this Court from determining whether citation was served in compliance with the rules of civil procedure and the trial court's order. To support its position, TLC cites *Norton*, which distinguished the return in *Dolly* on those grounds. *See* 2003 WL 21402021, at *3–4. This argument is not persuasive, and we disagree with the distinction made in *Norton*.

We expressly stated in *Dolly* that "[v]irtually any deviation will be sufficient to set aside a default judgment in a restricted appeal." *Dolly*, 10 S.W.3d at 388. When we concluded that the record did not affirmatively demonstrate that Dolly was served

–15–

in strict compliance with the trial court's order, our reasoning did not turn on the existence of multiple errors; we did not state that any defect required the existence of another defect to constitute error. Rather, we addressed each problem with the return in *Dolly* and explained why each problem constituted a defect in service. *See id.* at 387–89. Thus, the fact that the return in *Dolly* contained multiple errors is irrelevant and was not a basis on which to distinguish it from *Norton*. Nor is it a basis on which to distinguish *Dolly* from the instant case.[6]

Accordingly, based on the record before us, we conclude that even if the affidavit of service states "when and how" Lankford was served, the record does not affirmatively demonstrate that the manner of service reflected in the return was authorized.

### 5. The absence of any showing that no one over age sixteen was present when service was made is not trivial.

TLC cites *Cuetara v. DSCH Capital Partners, LLC*, No. 03-16-00078-CV, 2016 WL 3917181 (Tex. App.—Austin July 14, 2016, no pet.) (mem. op.), to argue that there was no requirement that the process server's affidavit state that she first attempted to serve someone over the age of sixteen, suggesting that the omission of such information is a mere formality, minor defect, or technical insufficiency that

---

[6] Further, as explained below, the return for service on Lankford is inherently inconsistent, which was also a defect in *Dolly*, 10 S.W.3d at 388. Thus, the return on Lankford does contain multiple errors, and TLC's attempt to distinguish *Dolly* is flawed for this additional reason.

does not invalidate a default judgment. This argument is not persuasive. TLC is misconstruing the omission of this information as being trivial, when it is not.

The Supreme Court of Texas recently explained that certain types of discrepancies may invalidate service whereas some discrepancies are "mere 'minutest details.'" *Spanton*, 612 S.W.3d at 317. The court explained, for example, that "[d]iscrepancies in addresses may be mere details when the order authorizes substitute service wherever the defendant could be found or when the defendant is indisputably personally served." *Id*. But it stated that "otherwise, this Court has repeatedly held that discrepancies in the defendant's name or address prevent any implication or presumption of proper substitute service." *Id*. The court cited *Cuetara* as properly distinguishing between these two types of discrepancies. *Id*.

In *Cuetara*, the rule 106 order authorized service on a defendant by delivering "a copy of the citation and original petition to [defendant's] usual place of business, [at a specified address], and leaving such process with the receptionist or such other person over the age of sixteen at the front office at such address." 2016 WL 3917181, at *1. The return stated that substituted service was effected by delivering the citation, petition, and rule 106 order to "John Doe as Manager, a person employed therein and authorized to accept service for [defendant] at the [specified address], the within named person's usual place of Work . . . ." *Id*. The affidavit further stated that the person served was thirty-five years old and had refused to give his name. *Id*.

On appeal, the defendant did "not argue that [the plaintiff had] deviated from the rules of civil procedure in effecting substituted service" and did not contend that service was executed at the wrong address. *Id.* at *2. Rather, the defendant argued that service was not in strict compliance with the court's rule 106 order because the affidavit of service did not explicitly state that the petition was served "at the front office" of the specified address or state how "John Doe" was authorized to receive service. *Id.* The Austin Court of Appeals rejected the defendant's arguments.

As to the specific room where service occurred, the court explained that the language of the rule 106 order suggested that the trial court "was more concerned with the type of person to be served" rather than "the specific room for service within that address." *Id.* at *3. The rule 106 order did not specify that the return had to state that service was at the front office. Even if it had, however, the court explained that "the most reasonable and natural interpretation" of the return was that the process server interacted with a manager at the front office of the specific address. *Id.* As to the identity of the person served and his authority to accept service, the court explained that the return was prima facie evidence that the person served was a visibly thirty-five-year-old "manager" who was "employed therein and authorized to accept service." *Id.* The order did not require the manager's name to be specified in the return. *Id.*

The instant case is distinguishable. Here, the rule 106 order expressed a clear preference for personal service on anyone over sixteen, emphasizing in bold font

that service by posting to the front door was authorized only if no one over age sixteen was present when service was attempted. Thus, whether a person over sixteen was present is not a trivial detail. The record also contains nothing that constitutes prima facie evidence that no one over the age of sixteen was present when service was attempted. As explained above, we may not infer this fact simply from the process server's statement that service was made pursuant to the rule 106 order. *See Dolly*, 10 S.W.3d at 389.

Accordingly, on this record, whether anyone over sixteen was present at the time of service was not a trivial detail, and our requiring this information to affirmatively appear in the record is not obeisance to the minutest detail.

### 6. It is not Lankford's burden to affirmatively show that no one over sixteen was present at the time of service.

Finally, TLC argues that there is no evidence that the process server failed to determine whether anyone over age sixteen was present prior to posting the citation. This argument is without merit because it was ***TLC's burden*** to ensure that the record affirmatively reflected strict compliance with the trial court's instructions. *See Primate Constr.*, 884 S.W.2d at 153. The record shows only that the process server attached the citation and petition to Lankford's front door—a manner of service not authorized by the trial court's order or the rules of civil procedure.

Accordingly, for all the foregoing reasons, the record does not affirmatively demonstrate that the trial court's instructions were strictly followed and that service on Lankford was accomplished in an authorized manner. *See Spanton*, 612 S.W.3d

at 318; *Primate Constr.*, 884 S.W.2d at 152; *Dolly*, 10 S.W.3d at 387–89. Thus, error is apparent on the face of the record. *See Dolly*, 10 S.W.3d at 387–89. We sustain the first part of appellants' sole issue.

**B.  Error is apparent on the face of the record because the affidavit of service regarding Pro-Fire is inherently inconsistent.**

In the second part of their sole issue, Pro-Fire and Lankford argue that there is error apparent on the face of the record regarding service on Pro-Fire. Citing our decision in *Dolly*, appellants contend that the affidavit of service is inherently inconsistent because it states in one place that service was executed by attaching the citation and petition to the front door at Lankford's residence and in another place the affidavit states that service was effected "in person." We agree.

We also faced this issue in *Dolly*. As discussed above, the trial court in *Dolly* authorized substituted service on a defendant by leaving the citation, petition, and rule 106 order with anyone over age sixteen at a specified address or, alternatively, by attaching the citation, petition, and rule 106 order to the door of the same address. 10 S.W.3d at 386. The return stated that the defendant was served with a copy of the citation by delivery "in person" while a type-written note at the bottom stated, "POSTED TO FRONT DOOR." *Id.* at 387. Because the return reflected two manners of service, we concluded that "[t]he return [was] inherently inconsistent

–20–

and, therefore, [did] not affirmatively demonstrate that service was executed as prescribed by the order." *Id.* at 388.[7]

Similarly, in our decision in *R.E.C.*, the rule 106 order required service to be "effected . . . by both mailing a true copy of the citation with a copy of the petition attached to [defendant's known address], and by posting a true copy of the citation with a copy of the petition attached on the front door of [defendant's known address]." 2015 WL 2205654, at *2. The return stated that citation was delivered

> to the within named Respondent/Defendant, to-wit: *Susan E. Cannon* . . . each, in person, a true copy of this instrument with a true and correct of the document attached hereto having first endorsed on such copy of said instrument the date of delivery.
>
> . . . .
>
> [x] Information received as to the whereabouts of defendant being *3800 Amesbury Drive Plano TX 75093 by Posting on the front door per Order on Motion for Alternative Service Rule 106 and by mailing a true and correct copy.*

*Id.* We held that the return was inherently inconsistent because it stated that the defendant "was served by delivery 'in person' while a subsequent section state[d] she was served by posting on the front door and by mailing." *Id.*

---

[7] In a subsequent paragraph of *Dolly*, the Court rejected the plaintiff's arguments (1) that the language "*POSTED TO FRONT DOOR*" showed service was effectuated in accordance with the trial court's requirements and (2) that it was of no consequence that "*POSTED TO FRONT DOOR" was located below the signed verification rather than above the verification. 10 S.W.3d at 389. The Court explained (1) that "*POSTED TO FRONT DOOR*" did not say *what* was posted to the front door and (2) that the verification concerned information in the "*foregoing* instrument," which meant that language below the verification was not in the "*foregoing* instrument" and, thus, was not verified. *Id.* The Court went on to explain that the verification was also defective because it was a blanket statement that citation was executed pursuant to the rules of civil procedure and did not verify the specific facts relating to the act of service. *Id.* Our discussion of these additional defects, however, was not central to or even part of our holding that the return was also inherently inconsistent. *See id.* at 388–89.

Like in *Dolly* and *R.E.C.*, the affidavit of service attached to the return relating to Pro-Fire states that Pro-Fire was served both "BY SECURING A COPY OF THE CITATION AND ORIGINAL PETITION TO THE FRONT DOOR" of Lankford's residence and "in person, having first endorsed the date of delivery on same." The return can be read to state that Pro-Fire was served by attaching the citation and petition to the front door. And the return can also be read to state that Pro-Fire was served in person. Thus, the affidavit of service is inherently inconsistent and does not affirmatively demonstrate that service was executed as prescribed by the rule 106 order. *See Dolly*, 10 S.W.3d at 388.

TLC argues that the affidavit is not inherently inconsistent for four reasons. First, TLC again contends that the language in the return stating that service was executed pursuant to the court's rule 106 order confirms that service was executed in accordance with the court's order. But this argument does not address the inherent inconsistency raised by the subsequent statement in the affidavit that delivery was "in person." And as discussed above, our own precedent establishes that we may not presume valid service from a conclusory statement that service was made pursuant to a rule 106 order. *See Dolly*, 10 S.W.3d at 389.

Second, TLC again contends that *Dolly* is distinguishable because the return in that case contained an "abundance of errors." But as explained above, our decision in *Dolly* did not turn on the existence of multiple errors.

Third, TLC argues that the return "should be given a fair, reasonable, and natural construction to its intent and meaning" and that "[w]hen read as a whole, the language at issue indicates that the process server attached the required documents to the front door in person [and] not that the process was achieved either by attaching it to the front door or providing it to the Appellants in person." Although we agree that a return should be given a fair, reasonable, and natural construction to give effect to its plain intent and meaning, *see Dole v. LSREF2 APEX 2, LLC*, 425 S.W.3d 617, 621 (Tex. App.—Dallas 2014, no pet.), TLC's reading is not a fair, reasonable, and natural construction of the return here.

The phrase "in person" has a distinct meaning in the context of service of process, reflecting service by hand delivery. *See* TEX. R. CIV. P. 106(a)(1) ("Unless the citation or an order of the court otherwise directs, the citation shall be served by . . . delivering to the defendant, ***in person***, a true copy of the citation with ***the date of delivery endorsed thereon*** with a copy of the petition attached thereto . . . ." (emphases added)). The language in the return—"in person, having first endorsed the date of delivery on same"—tracks the language of rule 106(a)(1). We further note that there are two different fonts in the affidavit: one font (not in all caps) appears to set up a form for in-person service, and another font (in all caps) appears to be information the process server filled in:

"The following came to hand on Dec 26, 2018, 10:35 am,

CITATION, PLAINTIFF'S ORIGINAL PETITION AND ORDER ON PLAINTIFF'S MOTION FOR SUBSTITUTED SERVICE ON DEFENDANT PRO-FIRE & SPRINKLER, LLC.

and was executed at 1165 BRENT AVE, TERRELL, TX 75160 within the county of KAUFMAN at 09:40 AM on Thu, Apr 25 2019, by delivering a true copy to the within named

PRO-FIRE AND SPRINKLER, LLC., BY SECURING A COPY OF THE CITATION AND ORIGINAL PETITION TO THE FRONT DOOR OF JAMES C. LANKFORD'S, THE MANAGER OF DEFENDANT PRO-FIRE & SPRINKLER, LLC, RESIDENCE LOCATED AT 1165 BRENT AVENUE, TERRELL, TEXAS 75160, PER THE ORDER ON PLAINTIFF'S MOTION FOR SUBSTITUTED SERVICE ON DEFENDANT PRO-FIRE & SPRINKLER, LLC,

in person, having first endorsed the date of delivery on same.

I am a person over eighteen (18) years of age and I am competent to make this affidavit. I am a resident of the State of Texas. I am familiar with the Texas Rules of Civil Procedure as they apply to service of Process. I am not a party to this suit nor related or affiliated with any herein, and have no interest in the outcome of the suit. I have never been convicted of a felony or of a misdemeanor involving moral turpitude. I have personal knowledge of the facts stated herein and they are true and correct."

Regardless, if the reference to securing a copy of the citation and petition to the front door were removed, the affidavit would reflect service "in person." Thus, it is not reasonable to construe "in person" as indicating that the process server intended to say that she personally attached the citation and petition to the front door. The only reasonable interpretation of the affidavit is that it reflects two inconsistent methods of service: in-person service (not in all caps) and service by posting to the front door (in all caps).

Even if leaving "in person" on the affidavit was a mistake resulting from the process server's use of a form affidavit, it was TLC's burden to correct the return so that it accurately reflected the manner of service before obtaining a default judgment. *See Primate Constr.*, 884 S.W.2d at 153 ("If the facts as recited in the . . . return, pre-printed or otherwise, are incorrect and do not show proper service, the one requesting service must amend the return prior to judgment."). It failed to do so.

Finally, TLC cites *Myan Management Group, L.L.C. v. Adam Sparks Family Revocable Trust*, 292 S.W.3d 750 (Tex. App.—Dallas 2009, no pet.), to argue that even if there is an inherent conflict, "it is, at most, a de minimis error or technicality that does not invalidate service."[8] But *Myan Management Group* is distinguishable. In that case, the defendant argued that the return did not reflect the manner of service because the return stated that service was made "by delivering to Myan Management . . . By delivering to Kyle Hooper Agent" and did not state that service was made by delivery **in person**. *Id.* at 754.

Thus, the issue in *Myan Management Group* was whether the return reflected any method of service at all. We held that the term "delivered," without the addition of "in person" in the service-of-process context was sufficient to describe delivery in person. *Id.* By contrast, the issue in this case is whether the affidavit of service reflects two inconsistent methods of service. And applying the distinct meaning of "in person" in the service-of-process context, we conclude that it does.

Accordingly, the affidavit of service on Pro-Fire is inherently inconsistent. Thus, the record does not affirmatively show strict compliance with the trial court's

---

[8] TLC also cites *Norton*, 2003 WL 21402021, at *2, to argue, "Appellants have also not provided any reasons as to how their due process rights were prejudiced by the inclusion of this language." The court in *Norton* stated, "[C]ourts will uphold default judgments when the plaintiff is able to prove that the service and the return strictly complied with the court's instructions, **and** the defendant fails to prove any other manner in which the service or the return violated that person's due process rights." *Id*. (emphasis added). Here, the record does not show that service on Pro-Fire (or Lankford) strictly complied with the court's instructions; thus, even if we were to follow *Norton*, appellants need not show any other manner in which the service or return violated their due-process rights.

rule 106 order regarding service on Pro-Fire.[9] Because error is apparent on the face of the record, we sustain the second part of appellants' sole issue.

## CONCLUSION

Having sustained the first and second parts of Pro-Fire and Lankford's sole issue, which are dispositive, we do not reach the remainder of their arguments. Because service was defective in this case, the trial court lacked jurisdiction to grant the default judgment against Pro-Fire and Lankford. We reverse the default judgment and remand the case to the trial court for further proceedings.

<table>
<tr><td></td><td>/Leslie Osborne//</td></tr>
<tr><td></td><td>LESLIE OSBORNE</td></tr>
<tr><td>191480f.p05</td><td>JUSTICE</td></tr>
</table>

Carlyle, J., dissenting

---

[9] Appellants similarly assert that the affidavit of service relating to Lankford contains the same inherent inconsistency as the affidavit of service relating to Pro-Fire. We agree; the affidavit of service relating to Lankford states that he was served "BY ATTACHING A TRUE COPY OF THE CITATION AND PLAINTIFF'S ORIGINAL PETITION TO THE FRONT DOOR" at Lankford's residence and "in person, having first endorsed the date of delivery on same." Thus, for the same reasons discussed herein with respect to Pro-Fire, service on Lankford is defective for this additional, and alternative, reason.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

PRO-FIRE & SPRINKLER, L.L.C.
AND JAMES C. LANKFORD,
Appellants

No. 05-19-01480-CV V.

THE LAW COMPANY, INC.,
Appellee

On Appeal from the 95th District
Court, Dallas County, Texas
Trial Court Cause No. DC-18-18762.
Opinion delivered by Justice
Osborne. Justices Myers and Carlyle
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court for a new trial.

It is **ORDERED** that appellants PRO-FIRE & SPRINKLER, L.L.C. and JAMES C. LANKFORD recover their costs of this appeal from appellee THE LAW COMPANY, INC.

Judgment entered this 29th day of November, 2021.