**Jesse WILSON, Petitioner,**

v.

**Michael Donnell DUNN, Respondent.**

**No. C–7796.**

Supreme Court of Texas.

Oct. 24, 1990.

Rehearing Overruled Jan. 23, 1991.

Don Prager, Fort Worth, on appeal only, for petitioner.

Robert D. Frye, Fort Worth, for respondent.

## OPINION

HECHT, Justice.

The district court in this case authorized substitute service of suit papers upon defendant without an affidavit or other evidence justifying such service as required by Rule 106(b) of the Texas Rules of Civil

Procedure.[1] Defendant nevertheless received citation and plaintiff's petition, but did not answer, and the trial court rendered default judgment against him. The court of appeals reversed the default judgment because of the defect in service and remanded the case to the trial court for further proceedings. 752 S.W.2d 15. We affirm.

## I

Jesse Wilson sued Michael Dunn for damages resulting from Dunn's negligent operation of a motor vehicle.[2] Wilson alleged that Dunn could be served with citation at his apartment, where, in fact, Dunn was then residing and has resided at all times material to this case. Repeated, sustained efforts to serve Dunn there, however, both in person and by mail, proved unsuccessful.

After several months, Wilson's attorney filed a motion for substitute service under Rule 106(b). Rule 106(b) states:

Upon motion *supported by affidavit* stating the location of the defendant's usual place of business or usual place of abode or other place where the defendant can probably be found and stating specifically the facts showing that service has been attempted under either (a)(1) or (a)(2) at the location named *in such affidavit* but has not been successful, the court may authorize service

(1) by leaving a true copy of the citation, with a copy of the petition attached, with anyone over sixteen years of age at the location specified *in such affidavit,* or

(2) in any other manner that *the affidavit* or other evidence before the court

shows will be reasonably effective to give the defendant notice of the suit. (Emphasis added.) Contrary to the explicit requirement of the rule, Wilson's motion was not verified or supported by affidavit or other evidence. Nonetheless, the judge of the 236th District Court to which the case was assigned granted the motion and ordered that citation be served upon Dunn either by attaching it to the door of his apartment or by delivering it to the apartment manager at Dunn's address. However, the judge instructed the clerk to attach a note to the docket sheet stating that no default judgment was to be taken.[3] The return of citation authorized by the district court stated that it had been served by a deputy constable "by delivering to the within named Michael Donell [sic] Dunn by delivering to his agent for service, Carol Berlinger, apartment manager"[4] a copy of the citation and plaintiff's original petition. Dunn actually received the papers, as he later acknowledged in a sworn statement given to Wilson's attorney:

... I received some suit papers from [Wilson's attorney]. These papers were placed in my apartment by the apartment manager where I live after the Constable served the papers on her. Within five days from the date that I received the suit papers, I hand delivered them to my insurance agent....

Within a few weeks an adjuster for Dunn's insurer telephoned Wilson's attorney to discuss the case. Following up their conversation, the adjuster wrote Wilson's attorney requesting him to agree that, pending efforts to obtain Dunn's cooperation and to settle Wilson's claim, Dunn would not be required to file an answer in

---

1. All references to rules are to the Texas Rules of Civil Procedure.

2. Wilson alleged that he was injured when the vehicle he was driving was struck from the rear by a vehicle driven by Dunn. In a sworn statement to Wilson's attorney, Dunn recounted: "[Wilson] was stopped waiting for a train. I was stopped behind him and I was looking at my Mapsco. I thought that the train had gone by and without looking up, I started my van moving forward and I hit the rear of Mr. Wilson's El Camino."

3. The record indicates that the district judge may have refused to grant the motion at first. We have no record of any hearing on the motion.

4. Wilson has never asserted that Dunn's apartment manager was his agent for service of process. The deputy constable appears to have filled out the wrong printed portion of the return, the form for service on individuals, instead of the form for service under Rule 106(b), which was not completed.

the case and no default judgment would be taken without ten days' notice. Wilson's attorney wrote at the bottom of the letter, "I agree to the above", signed it, and returned it to the adjuster. Shortly thereafter the adjuster retained an attorney to monitor the case. The attorney telephoned the clerk of the court on at least two occasions and was told that at the court's instruction a note had been attached to the file that no default judgment could be taken in the case. The attorney did not contact Dunn but the adjuster finally did, and obtained a statement from him. About the same time, however, the insurer transferred the case to another adjuster, and Wilson's attorney was not informed that Dunn had been contacted.

Concerned that the second anniversary of the accident was approaching, Wilson's attorney wrote Dunn a letter dated February 19, 1987, urging him to cooperate with his insurer and warning him of the possible consequences of failing to do so.[5] Specifically, the letter stated, "we are going to ask the Court for the Default Judgment against you during the second week of March, 1987." Wilson's attorney sent a copy of the letter to the adjuster and the attorney retained by the adjuster. In response to the letter, the sometimes elusive Dunn contacted Wilson's attorney and arranged to meet with him. Dunn gave Wilson's attorney a sworn statement in which he indicated that he had not failed to communicate with his insurer.

Convinced that the adjuster had not been fully candid with him, Wilson's attorney went to the 236th District Court on February 27, 1987, to obtain a default judgment. Finding that the judge of that court was not available, Wilson's attorney requested the file from the clerk so that he could take it to another judge for hearing on his request for a default judgment. The clerk was reluctant to give Wilson's attorney the file because the judge had told her that default judgment was not to be taken in the case. She pointed out to Wilson's attorney the note the judge had instructed her to attach to the file, but he insisted on taking it, and she finally relented. On the way to a hearing before the judge of the 67th District Court,[6] Wilson's attorney removed the note from the file and threw it away.

Wilson's original petition requested $144 damages for past medical expenses, and unspecified amounts for future medical expenses, lost wages, loss of earning capacity, and past and future physical pain and mental anguish. After hearing, the judge of the 67th District Court rendered default judgment for Wilson for $475,000.[7] Later the same day Wilson's attorney told the judge who granted the default judgment that he had removed the prior judge's note from the file because Dunn had actual knowledge of the suit and default was therefore appropriate. The judge who granted the default judgment strongly reproved Wilson's attorney but did not set aside the judgment.

Neither Dunn nor his insurer learned of the default judgment until after it was signed. Dunn filed a motion for new trial, which was also presented to the judge of the 67th District Court. The motion did not complain of the defect in service. After hearing evidence, the trial court denied the motion. The trial court concluded that substitute service was appropriate,[8] and that Dunn had received actual notice of the suit. The trial court also concluded that Dunn's failure to file an appearance was due to the conscious indifference of his insurer.

---

5. Wilson's attorney also appears to have been concerned whether Dunn had properly been served in view of the approaching end of the applicable two-year limitations period. See Tex. Civ.Prac. & Rem.Code Ann. § 16.003 (Vernon 1986).

6. The 236th District Court and the 67th District Court both sit in Tarrant County. They are permitted to, and do, hear each other's civil cases under Rule 330.

7. The limits of Dunn's insurance policy appear to be $500,000.

8. It is unclear from the record whether the trial court actually addressed the defect in service even though Dunn did not raise it in his motion for new trial.

On appeal, Dunn argued that service was defective and could not support the default judgment. Dunn also argued that the trial court's conclusion that he was not entitled to a new trial was against the great weight of the evidence and manifestly unjust. The appeals court agreed with Dunn's defective service argument and did not address his other arguments. Thus, the only issue presented to us is the sufficiency of service.

## II

For well over a century the rule has been firmly established in this state that a default judgment cannot withstand direct attack by a defendant who complains that he was not served in strict compliance with applicable requirements. *See, e.g., Uvalde Country Club v. Martin Linen Supply Co.,* 690 S.W.2d 884, 886 (Tex.1985) (per curiam); *McKanna v. Edgar,* 388 S.W.2d 927, 929 (Tex.1965); *Sloan v. Batte,* 46 Tex. 215, 216 (1876); *see also* R. Mc-Donald, Texas Civil Practice in District and County Courts § 17.23.2, at 134–144 (F. Elliott rev.1984). This Court only recently reasserted:

> There are no presumptions in favor of valid issuance, service, and return of citation in the face of a [direct] attack on a default judgment.... Moreover, failure to affirmatively show strict compliance with the Rules of Civil Procedure renders the attempted service of process invalid and of no effect.

*Uvalde,* 690 S.W.2d at 885. *See Higginbotham v. General Life & Acc. Ins. Co.,* 796 S.W.2d 695, 697 (Tex.1990).

■ In this case, Dunn was not strictly served in compliance with Rule 106(b) because substitute service was not properly authorized absent the affidavit explicitly required by the rule. The express requirement of an affidavit in support of a motion for substitute service was added effective in 1981. 599–600 S.W.2d xxxviii-xxxix (Tex. Cases 1980). It appears, however, that prior to that change in the text of the rule the courts uniformly held that substitute service could be authorized only upon probative evidence of the impracticality of personal service. *See Stylemark Constr., Inc. v. Spies,* 612 S.W.2d 654, 656–657 (Tex. Civ.App.—Houston [14th Dist.] 1981, no writ); *Harrison v. Dallas Court Reporting College,* 589 S.W.2d 813, 815–816 (Tex. Civ.App.—Dallas 1979, no writ); *Kirkegaard v. First City Nat'l Bank,* 486 S.W.2d 893, 894–895 (Tex.Civ.App.—Beaumont 1972, no writ); *Franks v. Montandon,* 465 S.W.2d 800, 801 (Tex.Civ.App.—Austin 1971, no writ); *Spencer v. Texas Factors, Inc.,* 366 S.W.2d 699, 700 (Tex.Civ. App.—Dallas 1963, writ ref'd n.r.e.); *cf. Sgitcovich v. Sgitcovich,* 241 S.W.2d 142, 144, 148 (Tex.1951) (trial court authorized substitute service on unverified motion but heard evidence of sufficiency of that service before rendering default judgment). Since the 1981 change in Rule 106(b) the courts have consistently held that substitute service may not properly issue on a motion supported by an affidavit that is conclusory or otherwise insufficient. *See Medford v. Salter,* 747 S.W.2d 519, 520 (Tex.App.—Corpus Christi 1988, no writ); *Garrels v. Wales Transp., Inc.,* 706 S.W.2d 757, 758–759 (Tex.App.—Dallas 1986, no writ); *Beach, Bait & Tackle, Inc. v. Holt,* 693 S.W.2d 684, 685–686 (Tex.App.—Houston [14th Dist.] 1985, no writ); *Mackie Constr. Co. v. Carpet Services, Inc.,* 645 S.W.2d 594, 596 (Tex.App.—Eastland 1982, no writ). We agree and hold that substitute service is not authorized under Rule 106(b) without an affidavit which meets the requirements of the rule demonstrating the necessity for other than personal service.

■ Wilson acknowledges that service on Dunn was defective because of the failure to comply with Rule 106(b), but argues that the default judgment rendered against Dunn should nevertheless stand because Dunn actually received the suit papers and actually knew of the pendency of the suit. We disagree. Actual notice to a defendant, without proper service, is not sufficient to convey upon the court jurisdiction to render default judgment against him. *See Harrell v. Mexico Cattle Co.,* 73 Tex. 612, 11 S.W. 863, 865 (1889). Rather, jurisdiction is dependent upon citation issued and served in a manner provided for by law.

*Id.; Panhandle Constr. Co. v. Casey,* 66 S.W.2d 705, 707 (Tex.Civ.App.—Amarillo 1933, writ ref'd); *see C.W. Bollinger Ins. Co. v. Fish,* 699 S.W.2d 645, 655 (Tex.App. —Austin 1985, no writ). Absent service, waiver, or citation, mere knowledge of a pending suit does not place any duty on a defendant to act. See *Harrell,* 11 S.W. at 865; *Panhandle Constr. Co.,* 66 S.W.2d at 707. Consequently, Dunn's knowledge that Wilson had sued him and his actual receipt of suit papers is not sufficient to invoke the district court's jurisdiction to render default judgment against him.

Wilson relies heavily upon section 3 of the RESTATEMENT (SECOND) OF JUDGMENTS (1982), which states: "When actual notice of an action has been given, irregularity in the content of the notice or the manner in which it was given does not render the notice inadequate." Wilson fails to note, however, that this rule does not apply to default judgments. As comment *d* to section 3 explains:

> The objection to the regularity of notice also often arises in the context of an application for relief from a default judgment. Here again there is a rational basis for treating an irregularity in notice-giving as significant even though actual notice has been conferred. To do so is to apply a rule of parity among the parties concerning formal defects in procedure.

> A default judgment is awarded not because the court is entirely satisfied that the claim has substantive merit ... but because the party in default was derelict in complying with the rules of procedure governing how he may make his defense. An applicant for relief from such dereliction must show that he acted with due diligence after having become aware of the default and that he has a good case on the merits.... Assuming he makes such a showing, the only ground supporting the judgment is that the defendant has failed to respond to the action in conformity with applicable procedure for doing so. If the defendant can then

show that the person commencing the action was guilty of comparable nonconformity with procedural rules, under a principle of equality the derelictions offset each other and the merits of the controversy may be brought forward for consideration.

This authority contradicts, rather than supports, Wilson's position.

■ Wilson also contends that Dunn is foreclosed from complaining that service was defective because he has admitted receipt of the suit papers. We agree that Dunn could have waived his complaint of defective service by conceding the issue, but he has not done so. Dunn has admitted *receipt,* not *service.* Indeed, the issue presented is whether actual receipt can cure defective service in this context. The two cases upon which Wilson relies demonstrate this distinction. In both *First Nat'l Bank v. Peterson,* 709 S.W.2d 276, 280 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.), and *Hurst v. A.R.A. Manufacturing Co.,* 555 S.W.2d 141, 142 (Tex.Civ. App.—Fort Worth 1977, writ ref'd n.r.e.), the defendant admitted not simply that process was received, but that it was "duly served". The distinction between actual receipt and proper service is precisely what gives rise to the issue we address here. We hold that a default judgment is improper against a defendant who has not been served in strict compliance with law, even if he has actual knowledge of the lawsuit. *See Higginbotham v. General Life & Acc. Ins. Co.,* 796 S.W.2d 695, 697 (Tex.1990).

■ Finally, Wilson argues that Dunn has failed to preserve any complaint of defective service by not raising the issue in his motion for new trial. Rule 324 imposes no such requirement for preservation of such error. TEX.R.CIV.P. 324; *see Bronze & Beautiful, Inc. v. Mahone,* 750 S.W.2d 28, 29 (Tex.App.—Texarkana 1988, no writ); *American Universal Ins. Co. v. D.B. & B., Inc.,* 725 S.W.2d 764, 765 (Tex. App.—Corpus Christi 1987, writ ref'd n.r. e.). We hold that Dunn's complaint was preserved for appeal.[9]

---

9. Rule 324 states that no complaints other than those specified in the rule need be raised in a

motion for new trial as a prerequisite to appeal. The rule was amended in 1978 and 1981 to limit

## III

Accordingly, we conclude that the default judgment against Dunn was improper. We therefore affirm the judgment of the court of appeals reversing the judgment of the district court and remanding the case to that court for further proceedings.

the use of motions for new trial to preserve error. However, Texas Rule of Appellate Procedure 52(a) provides that a complaint is not preserved for appellate review unless it is presented to the trial court and a ruling obtained. This rule serves the salient purpose of requiring that all complaints to be urged on appeal first be presented to the trial court so that any error can be corrected without appeal, if possible. How Rule 52(a) applies to complaints which cannot be raised prior to judgment but are not specifically required by Rule 324 to be raised in a motion for new trial, is unclear. On the one hand, if Rule 52(a) required that such complaints be raised by some means tantamount to a motion for new trial but simply not called by that name, then Rule 324 would be deceptive and its policy impaired. On the other hand, if Rule 52(a) does not apply to such complaints, then its language is overly broad and its policy undermined. These problems should be considered in future amendments to the rules.