# IN THE SUPREME COURT OF TEXAS

═══════════════

No. 19-0920

═══════════════

MATTHEW M. SPANTON AND ELISHA SPANTON D/B/A HILL COUNTRY KENNELS,
PETITIONERS,

v.

PAMELA S. BELLAH, RESPONDENT

═══════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRD DISTRICT OF TEXAS

═══════════════════════════════

**PER CURIAM**

In this negligence action, the trial court entered a default judgment in favor of plaintiff Pamela Bellah after defendants Matthew and Elisha Spanton failed to timely file an answer or otherwise appear. More than thirty days later, the Spantons filed a restricted appeal claiming Bellah failed to properly serve them with process. The court of appeals disagreed, holding that a discrepancy between the address at which the trial court authorized substitute service and the address where the process server actually sent substitute service was minor and did not invalidate service or the default judgment. Because we disagree, we vacate the default judgment and remand the case to the trial court.

The Spantons employed Bellah at their business, Hill Country Kennels. Bellah sued the Spantons for negligence, alleging that one of the dogs housed at the kennel attacked and seriously injured her. She asserted in her petition that the Spantons resided and could be served at a specific

house number on "Heather Hills Dr." in Dripping Springs, Texas. The clerk issued the citation for service at that address.

After several unsuccessful attempts to serve the Spantons, Bellah filed a motion for substitute service and attached affidavits from the process server. The process server stated that he had attempted service on the Spantons at the specified house number, but on "*Heathers* Hill Dr." instead of "Heather *Hills*" [Emphasis added.] He explained that, while attempting service on "*Heathers* Hill," an "employee" confirmed that Matthew Spanton "resides at the residence, but he was not home." He also stated that, in two different phone conversations, Elisha Spanton refused to meet with him to accept service, but she sent him an email confirming that he could serve process at the street number on "*Heathers* Hill." Bellah's motion asked the trial court to authorize substitute service giving "reasonably effective notice" by attaching the citation and petition "to the gate surrounding the property," by personally delivering them to "any person over the age of 16," and by sending them by first class and certified mail, all to "defendants' residence located at" the same specified house number on "*Heathers* Hill." [Emphasis added.]

The trial court granted the motion and authorized substitute service by first-class and certified mail, return receipt requested, and by attaching a copy of the citation and petition to the gate, referring to the specified house number on "*Heathers* Hill." [Emphasis added.] The process server later filed a return stating he executed substitute service by posting a copy to the gate and by sending a copy by certified mail, return receipt requested, at the specified house number on "Heather *Hills* Drive." Bellah then moved for default judgment, certifying that the Spantons' last-known address was the specified house number on "Heather *Hills*."

To summarize, Bellah's original petition, the citation the clerk issued, the process server's return of substitute service, and Bellah's motion for default judgment all identified the Spantons' address as the specified house number on "Heather *Hills*." But Bellah's motion for substitute service, the process server's supporting affidavits, and the trial court's order authorizing substitute service all identified the Spantons' address as the specified house number on "*Heathers* Hill."

The day after Bellah filed her motion for default judgment, the court clerk received the certified-mail return receipt, which was stamped "RETURN TO SENDER UNCLAIMED UNABLE TO FORWARD." Six days later, the clerk received the first-class mailing packet, which was marked "FORWARD TIME EXP[IRED] R[E]T[UR]N TO SEND[ER]." This stamp also stated that the Spantons' correct forwarding address was a different house number on a different street in Spicewood, Texas. That same day, the trial court entered a final default judgment against the Spantons, awarding Bellah $950,000, plus court costs and interest. Bellah asked the court to mail three copies of the abstract of judgment to each of the Spantons. The court mailed the abstracts to the specified house number on "Heather *Hills* Drive."

Nearly three months later, the Spantons filed a notice of restricted appeal. *See* TEX. R. APP. P. 26.1(c), 30. The court of appeals held that the face of the record failed to demonstrate error. *Spanton v. Bellah*, — S.W.3d —, —, 2019 WL 4020270, at *4–5 (Tex. App.—Austin 2019); *see Ex parte E.H.*, 602 S.W.3d 486, 497 (Tex. 2020) (holding that an appellant who establishes the appellate court's jurisdiction under rule 30 "must then establish error from the face of the record to prevail in the restricted appeal"). First, the court held that the process server's affidavits were sufficient to show "that leaving the citation and petition at the Spantons' 'usual place of abode' would be reasonably effective to give them notice of Bellah's suit." — S.W.3d at —. The court

then held that the discrepancy between the trial court's order granting substitute service on "*Heathers* Hill" and the process server's return stating he had effected substitute service on "Heather *Hills*" did not necessitate reversal. *Id.* at —. Although the court agreed that the record "must show strict compliance with the rules of service of citation for a default judgment to withstand a direct attack on restricted appeal," *id.* at — (citing *Primate Constr., Inc. v. Silver*, 884 S.W.2d 151, 152 (Tex. 1994) (per curiam)), it concluded that "'strict compliance' does not require 'obeisance to the minutest detail,'" *id.* at — (quoting *Cuetara v. DSCH Capital Partners, LLC*, No. 03-16-00078-CV, 2016 WL 3917181, at *2 (Tex. App.—Austin July 14, 2016, no pet.) (mem. op.)).

We have long held that a no-answer default judgment cannot stand when the defendant "was not served in strict compliance with applicable requirements." *Wilson v. Dunn*, 800 S.W.2d 833, 836 (Tex. 1990). Because no-answer default judgments are disfavored, *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 86 (Tex. 1992), and because trial courts lack jurisdiction over a defendant who was not properly served with process, *Wilson*, 800 S.W.2d at 836, we have construed "strict compliance" to mean just that. We indulge no presumptions in favor of valid issuance, service, or return of citation. *See Uvalde Country Club v. Martin Linen Supply Co.*, 690 S.W.2d 884, 885 (Tex. 1985); *McKanna v. Edgar*, 388 S.W.2d 927, 929 (Tex. 1965). Service of process that does not strictly comply with the rules' requirements is "invalid and of no effect." *Uvalde*, 690 S.W.2d at 885 (citing *McKanna*, 388 S.W.2d at 929).

The court of appeals held that strict compliance did not equate to "obeisance to the minutest detail," quoting *Cuetara*, 2016 WL 3917181, at *2. In *Cuetara*, the trial court's order authorized substitute service at the defendant's place of business by "leaving such process with the

4

receptionist or such other person over the age of sixteen at the front office at such address." *Id.* at *1. The return confirmed that process was served at the designated address, but it did not specify that it was left "at the front office." *Id.* Concluding that service was properly effected, the court of appeals noted that the court's order "did not specify how proof of service should be made or that it had to include every detail listed in the order for substituted service." *Id.* at *2. The court noted that the scenario before it was not one where, for instance, "service was improper because it was executed at a different address." *Id.*

*Cuetara* properly distinguishes the types of discrepancies that may invalidate substitute service from those that are mere "minutest details." Discrepancies in addresses may be mere details when the order authorizes substitute service wherever the defendant could be found or when the defendant is indisputably personally served. *See, e.g.*, *Silver B & Laviolette, LLC v. GH Contracting, Inc.*, No. 03-10-00091-CV, 2010 WL 4053791, at *3 (Tex. App.—Austin Oct. 12, 2010, no pet.) (mem. op.) (noting that defendant's agent was personally served); *Westcliffe, Inc. v. Bear Creek Const., Ltd.*, 105 S.W.3d 286, 291 (Tex. App.—Dallas 2003, no pet.) (upholding service at "Midway" when court authorization said "Medway" because the authorization also permitted service wherever defendant could be found); *Garcia v. Gutierrez*, 697 S.W.2d 758, 760 (Tex. App.—Corpus Christi 1985, no writ) (upholding service when "the return affirmatively states that it was served on the named defendant").

But otherwise, this Court has repeatedly held that discrepancies in the defendant's name or address prevent any implication or presumption of proper substitute service. *See Uvalde*, 690 S.W.2d at 885 (holding that service was ineffective when the person served was "Henry Bunting," but the registered agent was "Henry Bunting, Jr."); *Hendon v. Pugh*, 46 Tex. 211, 212 (1876)

(reversing default judgment when the return was served on "J.N. Hendon" but the named defendant was "J.W. Hendon"); *Faver v. Robinson*, 46 Tex. 204, 205 (1876) (reversing default judgment when service of citation was served on "John R. Favers" but the named defendant was "John R. Faver"); *see also Creaven v. Creaven*, 551 S.W.3d 865, 874 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (holding substitute service ineffective when "the Affidavit of Service reflects a different street name than the street name in the substituted service order, and there is no evidence in the record that these addresses refer to the same place"); *Lytle v. Cunningham*, 261 S.W.3d 837, 840 (Tex. App.—Dallas 2008, no pet.) (holding that substitute service was ineffective and involved more than a "slight variance" when citation was issued to "Mr. Chris Lytle" but the return said it was delivered to "Christopher Lytle").

Such deviances are certainly not trivial when the trial court has authorized substitute service. "When a trial court orders substituted service pursuant to rule 106, the only authority for the substituted service is the order itself." *Dolly v. Aethos Commc'ns Sys., Inc.*, 10 S.W.3d 384, 388 (Tex. App.—Dallas 2000, no pet.); *see Vespa v. Nat'l Health Ins. Co.*, 98 S.W.3d 749, 752 (Tex. App.—Fort Worth 2003, no pet.) (same); *Becker v. Russell*, 765 S.W.2d 899, 900 (Tex. App.—Austin 1989, no writ); *Broussard v. Davila*, 352 S.W.2d 753, 754 (Tex. App.—San Antonio 1961, no writ) ("Except upon the terms and conditions stated by the judge in his order, there is no authority for substitute service.").

In this case, the trial court's order authorized substitute service at a house number on "*Heathers* Hill Drive" in Dripping Springs, and the return stated that service was executed at the same house number but on "Heather *Hills* Drive" in Dripping Springs. Substitute service therefore did not strictly comply with the trial court's order. *See Broussard*, 352 S.W.2d at 754 ("If the

manner prescribed is not followed, then service is accomplished in a manner not authorized by the judge . . . ."). Nothing in the record demonstrates that the Spantons actually received substitute service or that Heather Hills Drive and Heathers Hill Drive are the same street. While one might reasonably presume or believe that to be true, we cannot entertain such presumptions or beliefs to uphold a default judgment based on substitute service. The face of the record in this case establishes that the substitute service did not strictly comply with the order permitting such service. As a result, the default judgment cannot stand. Without hearing oral argument, TEX. R. APP. P. 59.1, we grant the Spantons' petition for review, vacate the default judgment, and remand the case to the trial court for further proceedings.

Opinion delivered: November 20, 2020