**Opinion issued December 5, 2023**



In The

# Court of Appeals

### For The

## First District of Texas

_____

### NO. 01-22-00416-CV

_____

### ADALBERTO BARAHONA, Appellant

### V.

### CRYSTAL SHAFER, Appellee

---

### On Appeal from the 234th District Court
### Harris County, Texas
### Trial Court Case No. 2020-59556

---

### MEMORANDUM OPINION

In this restricted appeal, appellant Adalberto Barahona challenges the no-answer default judgment awarding appellee Crystal Shafer $2,046,485.50 in damages against him. Among his appellate issues, Barahona asserts that Shafer did not properly serve him with process. Because we conclude that the face of the record

establishes defective service of process, we reverse the default judgment and remand the case to the trial court for further proceedings.

## Background

Shafer filed suit against Barahona in September 2020. She alleged that she had been a passenger in a truck driven by Barahona "when, due to [his] negligence and gross negligence, the truck rolled over causing serious injuries to [her]." She sought personal-injury damages, including damages for mental anguish, physical impairment, disfigurement, lost wages, and medical expenses.

The following month, Shafer filed a motion for substituted service under Rule of Civil Procedure 106(b). She attached the affidavit of a process server, who detailed six unsuccessful attempts at serving Barahona at his home.

On November 7, 2020, the trial court granted Shafer's motion and authorized substituted service (1) by delivering a copy of the citation and petition to anyone over sixteen years of age at Barahona's home or (2) by attaching a copy of the citation and petition to the home's front door. Three days later, on November 10, 2020, the trial court voided the November 7 order.

That same day (November 10), the trial court signed a new order granting Shafer's motion for substituted service. Like the voided November 7 order, the November 10 order authorized service (1) by delivering a copy of the citation and petition to anyone over sixteen years of age at Barahona's home or (2) by attaching

a copy of the citation and petition to the home's front door. But the November 10

order added the following requirements for service:

> It is further ORDERED that the service made by the above method shall not be deemed perfected unless it also complies with the following provisions:
>
>> (a) a copy of the citation and petition shall be mailed by both certified mail, return receipt requested, and regular mail to the Defendant at the same address at which service is authorized above;
>>
>> (b) the return of service shall not be made until 30 days after mailing or until the process server receives back the green card from the post office, whichever is earlier;
>>
>> (c) the return of service shall include a statement setting out the date of mailing and the result of the mailing by certified mail and the date of mailing and the result of mailing by regular mail (i.e., whether the envelope was returned by the post office, or the green card came back signed, or whatever happened as a result of the mailing); and
>>
>> (d) a copy of any envelope or green card returned by the post office shall be attached to the return of citation.
>
> It is further ORDERED that the return of service of the person executing service pursuant to this Order shall otherwise be made in accordance with Rule 107, of the Texas Rules of Civil Procedure.
>
> It is further ORDERED that service of process will be deemed complete upon compliance with this Order, regardless of whether defendant signs the certified mail receipt.

On November 20, 2020, the process server filed a return of service. The return

of service was comprised of an affidavit of service signed by the process server on

November 10. The affidavit was attached to the November 7 order, which the record

3

reflects was voided by the trial court on November 10. In the affidavit of service, the process service attested that he had served Barahona on November 10 by affixing to the front door of Barahona's residence (1) the order granting the motion for substituted service,[1] (2) the citation, and (3) Shafer's original petition. Attached to the affidavit of service was a photograph showing papers taped to a door. The affidavit did not mention whether a copy of the citation and petition had been sent by certified or regular mail to Barahona.

One year later, on November 11, 2021, Shafer filed a motion for default judgment. She asserted that, on November 10, 2020, Barahona was "served via substitute service by firmly affixing a true copy of the citation, with a copy of the Petition and this Order authorizing substitute service . . . to the front door of [Barahona's] last known usual place of abode." She stated that return of service was filed with the trial court on November 20, 2020. To her motion, Shafer attached the return of service, which included the process server's affidavit of service. However, Shafer did not state that the additional requirements of service set out in the live November 10 order had been met. That is, she did not show that her petition and the citation had been sent to Barahona by certified and regular mail.

---

[1]    The process server did not specify whether he had affixed the November 7 order or the November 10 order to Barahona's front door. But the record suggests that it was the November 7 order because the process server attached his affidavit of service to the November 7 order in the return of service.

Shafer claimed that she was entitled to a default judgment against Barahona because he had been "properly served and did not file an answer." She asked the trial court to award her damages totaling $2,046,485.50. In support of her damages, Shafer offered her own affidavit in which she described her personal injuries and itemized her damages.

On December 1, 2021, the trial court signed an order—a default judgment—which granted Shafer's motion for default judgment and awarded her $2,046,485.50 in damages against Barahona. Six months later, on June 1, 2022, Barahona filed a notice of restricted appeal. Shafer did not file an appellee's brief.

## Restricted Appeal

### A. Legal Principles: Restricted Appeals

A restricted appeal is a procedural device available to a party who did not participate, either in person or through counsel, in a proceeding that resulted in a judgment against the party. *See* TEX. R. APP. P. 30. A party filing a restricted appeal must demonstrate that (1) his notice of restricted appeal was filed within six months after the judgment was signed; (2) he was a party to the underlying suit; (3) he did not participate at the hearing that resulted in the judgment complained of and did not timely file any post-judgment motions or requests for findings; and (4) error is apparent on the face of the record. *Pike-Grant v. Grant*, 447 S.W.3d 884, 886 (Tex. 2014); *see* TEX. R. APP. P. 30 (stating requirements (1)–(3)); *see also* TEX. R. APP.

P. 26.1(c) (providing that notice of restricted appeal "must be filed within six months after the judgment or order is signed"). The first three requirements "are jurisdictional." *Ex parte E.H.*, 602 S.W.3d 486, 497 (Tex. 2020). The fourth requirement, which is derived from case law, is not jurisdictional and "goes to the merits of the appeal." *Id.*

## B.     Timely Filed Notice of Restricted Appeal

We begin by determining whether Barahona filed his notice of restricted appeal within six months after the trial court signed the default judgment on December 1, 2021. *See* TEX. R. APP. P. 26.1(c); *Pike-Grant*, 447 S.W.at 886. Shafer has filed a motion to dismiss the appeal, asserting that Barahona's notice of restricted appeal, filed on June 1, 2022, was not timely. She acknowledges that Rule of Appellate Procedure 26.1(c) expressly states that a notice of restricted appeal must be filed "within six months" after the judgment or order is signed, but she interprets six months to equal 180 days. Based on her interpretation, Shafer contends that Barahona's notice of restricted appeal, filed 183 days after the trial court's default judgment, was untimely. While Shafer cites no authority for her interpretation, we note that other courts of appeal have rejected interpreting "six months" to mean 180 days. *See, e.g.*, *Rase Forwarding, LLC v. Euler Hermes N. Am. Ins. Co.*, No. 13-20-00366-CV, 2021 WL 3775627, at *3 (Tex. App.—Corpus Christi–Edinburg Aug. 26, 2021, no pet.) (mem. op.) (rejecting appellee's argument that "that six months in

a restricted appeal should mean 180 days"); *Eco Gen. Contractors LLC v. Goodale*, No. 02-18-00146-CV, 2019 WL 1179409, at *2 (Tex. App.—Fort Worth Mar. 14, 2019, no pet.) (mem. op.) (explaining that "the notice of [restricted] appeal was due within six months—not 180 days"); *Ex parte K.K.*, No. 02-17-00158-CV, 2018 WL 1324696, at *2 (Tex. App.—Fort Worth Mar. 15, 2018, no pet.) (mem. op.) ("Because rule 26.1[(c)] provides a six-month deadline, rather than a 180-day deadline, DPS's notice of restricted appeal that was filed on May 3, 2017—six months after November 3, 2016—is timely."); *see also Gulf Cas. Co. v. Garner*, 48 S.W.2d 746, 747 (Tex. Civ. App.—El Paso 1932, writ ref'd) ("It is our opinion that the 'six months' provided for means 6 calendar months, and not 180 days as contended by appellant."). We also note that this Court and other courts of appeals have used six calendar months, not 180 days, to calculate the deadline for filing a notice of restricted appeal. *See, e.g., Jennings v. Fairmont Park Homes Ass'n, Inc.*, No. 01-16-00779-CV, 2017 WL 83611, at *1 (Tex. App.—Houston [1st Dist.] Jan. 10, 2017, no pet.) (mem. op.) ("Jennings's notice of restricted appeal was due within six months of the March 28, 2016 final judgment, or by September 28, 2016."); *Ex parte Davila*, No. 13-15-00202-CV, 2016 WL 872997, at *2 (Tex. App.—Corpus Christi Feb. 18, 2016, no pet.) (mem. op.) (stating that "the trial court signed the order of expunction on October 22, 2014, and the Department filed its notice of restricted appeal on April 22, 2015, within the six-month deadline").

We conclude that Barahona's notice of appeal was due within six calendar months of the December 1, 2021 default judgment—not within 180 days—making the notice of appeal due by June 1, 2022. *See* TEX. R. APP. P. 26.1(c). Thus, Barahona's notice of appeal, filed on June 1, 2022, was timely.[2] *See Eco Gen. Contractors*, 2019 WL 1179409, at *2; *K.K.*, 2018 WL 1324696, at *2. Accordingly, we hold that Barahona has satisfied the first requirement of his restricted appeal, and we deny Shafer's motion to dismiss.

## C.   Party to Suit, Non-Participation, and No Post-Judgment Filings

The record shows that Barahona was a party to the suit, thus satisfying the second requirement for a restricted appeal. *See Pike-Grant*, 447 S.W.3d at 886.

Regarding the third requirement of nonparticipation, we note that the default judgment recites that the trial court considered the motion, the evidence attached to the motion, and "the arguments of the parties." However, the last part of the recitation, suggesting that Barahona presented an argument to the trial court, is not supported by the record.

---

[2]   In his response to the motion to dismiss, Barahona asserts that his notice of restricted appeal was filed on May 31, 2022, not on June 1, 2022. The notice of appeal was file-stamped by the district clerk's office on June 1, 2022, but, as pointed out by Barahona, the district clerk's letter of assignment indicates that the notice was filed on May 31, 2022. Regardless of whether it was filed on June 1 or May 31, the notice of restricted appeal was timely. *See Eco Gen. Contractors LLC v. Goodale*, No. 02-18-00146-CV, 2019 WL 1179409, at *2 (Tex. App.—Fort Worth Mar. 14, 2019, no pet.) (mem. op.) (holding that notice of restricted appeal—filed on April 27, 2018, to challenge default judgment signed on October 27, 2017—was timely).

In his brief, Barahona makes the undisputed statement that the motion for default judgment was heard by submission. *See* TEX. R. APP. P. 38.1(g) ("In a civil case, the court will accept as true the facts stated unless another party contradicts them."). The record reflects that Barahona did not file any pleadings or any response to the motion for default judgment before the trial court heard the motion by submission. Thus, being mindful that we must "liberally construe the non-participation requirement for restricted appeals in favor of the right to appeal," *see Pike-Grant*, 447 S.W.3d at 886, we conclude that the record shows Barahona did not participate in the hearing resulting in the default judgment, *see* TEX. R. APP. P. 30; *Pike-Grant*, 447 S.W.3d at 886. The record further reflects that Barahona did not timely file any post-judgment motions or a request for findings of fact and conclusions of law. *See* TEX. R. APP. P. 30; *Pike-Grant*, 447 S.W.3d at 886. The district clerk's letter of assignment also states that Barahona did not file a motion for new trial or request findings of fact and conclusions of law. Accordingly, we hold that Barahona satisfied the third requirement of his restricted appeal.

**D. Error on the Face of the Record**

Finally, we address the fourth requirement for a restricted appeal—whether there is error on the face of the record. *See Pike-Grant*, 447 S.W.3d at 886. The "face of the record" consists of all the documents that were before the trial court at the time it rendered judgment. *See Alexander v. Lynda's Boutique*, 134 S.W.3d 845,

9

848–49 (Tex. 2004). Barahona raises three appellate issues in which he contends that error appears on the face of the record. In his first issue, Barahona asserts that the face of the record shows that he was not properly served with process. Among his arguments, Barahona asserts that service was defective because Shafer failed to serve him in strict compliance with the order authorizing substituted service.

### 1.    *Legal Principles: Service of Process*

No-answer default judgments are disfavored, and a trial court lacks jurisdiction over a defendant who was not properly served with process. *Spanton v. Bellah*, 612 S.W.3d 314, 316 (Tex. 2020); *Pro-Fire & Sprinkler, L.L.C. v. Law Co., Inc.*, 661 S.W.3d 156, 162 (Tex. App.—Dallas 2021, no pet.). Defective service of process constitutes error apparent on the face of the record. *GEICO Cnty. Mut. Ins. Co. v. Kuye*, No. 01-21-00393-CV, 2022 WL 3452324, at *2 (Tex. App.—Houston [1st Dist.] Aug. 18, 2022, no pet.) (mem. op.).

It is well established that "a no-answer default judgment cannot stand when the defendant 'was not served in strict compliance with applicable requirements.'" *Spanton*, 612 S.W.3d at 316 (quoting *Wilson v. Dunn*, 800 S.W.2d 833, 836 (Tex. 1990)). We indulge no presumptions, even reasonable ones, in favor of valid issuance, service, or return of citation. *See id.* at 316–17; *Pro-Fire & Sprinkler*, 661 S.W.3d at 162. "Service of process that does not strictly comply with the rules' requirements is 'invalid and of no effect.'" *Spanton*, 612 S.W.3d at 317 (quoting

*Uvalde Country Club v. Martin Linen Supply Co.*, 690 S.W.2d 884, 885 (Tex. 1985)). Whether service strictly complies with the rules is a question of law which we review de novo. *Dugas v. Vardell*, No. 01-21-00142-CV, 2022 WL 3093036, at *3 (Tex. App.—Houston [1st Dist.] Aug. 4, 2022, no pet.) (mem. op.).

"Texas Rule of Civil Procedure 106 authorizes a court to order a substitute method of service."[3] *Berkefelt v. Jackson*, No. 01-07-00526-CV, 2008 WL 4530693, at *1 (Tex. App.—Houston [1st Dist.] Oct. 9, 2008, no pet.) (mem. op.) (citing TEX. R. CIV. P. 106(b)); *see* TEX. R. CIV. P. 107(f) ("Where citation is executed by an alternative method as authorized by Rule 106, proof of service shall be made in the manner ordered by the court."). When a court orders substituted service under Rule 106, the order itself provides the only authority for the substituted service. *See Berkefelt*, 2008 WL 4530693, at *1. As a result, "any deviation from the trial court's order necessitates a reversal of the default judgment based on service." *Id.* (citing *Becker v. Russell*, 765 S.W.2d 899, 900 (Tex. App.—Austin 1989, no writ)).

Strict compliance with the rules governing service of process must affirmatively appear in the record for a default judgment to withstand direct attack. *Primate Constr., Inc. v. Silver*, 884 S.W.2d 151, 152 (Tex. 1994). It is the

---

[3] Rule of Civil Procedure 106 was amended effective December 31, 2020. All references to Rule 106 are to the version in effect before the 2020 amendment when substituted service was ordered by the trial court in this case. *See Nikolenko v. Nikolenko*, No. 01-20-00284-CV, 2022 WL 479988, at *13 n.6 (Tex. App.—Houston [1st Dist.] Feb. 17, 2022, pet. denied) (mem. op.).

responsibility of the one requesting service, not the process server, to see that service is properly accomplished. *Id.* at 153 (citing TEX. R. CIV. P. 99(a)). This responsibility extends to ensuring that service is properly reflected in the record. *Id.*

### 2.    *Analysis*

Shafer served Barahona by substituted service under Rule 106, and thus was required to serve Barahona in strict compliance with the trial court's Rule 106 order granting Shafer's motion for substituted service. *See Berkefelt*, 2008 WL 4530693, at *2. The trial court signed a Rule 106 order on November 7, 2020, but the trial court voided that order three days later, on November 10, the same day that Shafer's process server attested that he served Barahona by posting the citation, the petition, and the Rule 106 order on Barahona's door. In both the void November 7 order and the live November 10 order, the trial court authorized Shafer to serve Barahona (1) by delivering a copy of the citation and petition to anyone over sixteen years of age at Barahona's home or (2) by attaching a copy of the citation and petition to the home's front door. But the live Rule 106 order also mandated that service would "not be deemed perfected" unless a copy of the citation and petition was "mailed by both certified mail, return receipt requested, and regular mail" to Barahona at his residence. The order then listed additional requirements attendant to service by certified and regular mail, including (1) waiting "until 30 days after mailing or until the process server receives back the green card from the post office, whichever is

12

earlier"; (2) setting out, in the return of service, when the mailings by certified mail and regular mail occurred and the results of those mailings; and (3) attaching to the return of citation "a copy of any envelope or green card returned by the post office."

We must ascertain whether the record affirmatively reflects that Shafer strictly followed the trial court's instructions regarding the manner of service authorized by the live Rule 106 order. *See Spanton*, 612 S.W.3d at 317; *Pro-Fire & Sprinkler*, 661 S.W.3d at 163. The return of service—here, the process server's affidavit of service—showed that the process server affixed (1) the order granting the motion for substituted service, (2) the citation, and (3) the petition to the front door of Barahona's residence. The return of service does not indicate that the citation and petition were mailed by certified and regular mail to Barahona as required by the live Rule 106 order. Nothing appears in the record to affirmatively demonstrate that the citation and petition were mailed to Barahona by any means. Because it is prima facie evidence of how service was performed, the return of service proves that the citation and petition were not mailed to Barahona as instructed by the trial court in the Rule 106 order. *See Primate*, 884 S.W.2d at 152 (holding that return of service is considered prima facie evidence of facts recited therein).

We recognize that the void Rule 106 order did not have a requirement to mail the petition and citation to Barahona as required by the live Rule 106 order. The return of service appears to indicate that, when Shafer served Barahona on

13

November 10, she served him pursuant to the void November 7 order. Even though the record does not show the precise time on November 10 when the trial court voided the November 7 order and then signed the order requiring service by mail, we are mindful that "[w]e indulge no presumptions in favor of valid issuance, service, or return of citation." *See Spanton*, 612 S.W.3d at 316. We are also mindful that it was Shafer's responsibility to ensure that the record affirmatively demonstrated strict compliance with the rules governing service. *See Primate*, 884 S.W.2d at 153. Given the record, Shafer failed to satisfy that responsibility. The record shows that the only valid order providing legal authorization for substituted service on November 10 was the order requiring service by mail. *See Berkefelt*, 2008 WL 4530693, at *2. Shafer violated Rule 106 when she failed to strictly follow that order. *See Pro-Fire & Sprinkler*, 661 S.W.3d at 163 (holding that service by posting citation and petition on defendant's front door was defective because trial court had authorized substituted service by posting on defendant's front door only if no one over age of sixteen was home when service was attempted and return of service did not state that no one over sixteen was home when service was attempted); *Plum v. Fuller*, No. 10-18-00363-CV, 2020 WL 5939055, at *2 (Tex. App.—Waco Aug. 26, 2020, no pet.) (mem. op.) (holding that service was defective because trial court's Rule 106 order had required citation, petition, and order to be posted "on the door"

14

and returns of service reflected only that citation was posted and failed to specify where it had been posted).

We conclude that error appears on the face of the record because Rule 106's requirements were not met. *See Spanton*, 612 S.W.3d at 318 ("The face of the record in this case establishes that the substitute service did not strictly comply with the order permitting such service."). Shafer's violation of Rule 106 made the service of process on Barahona invalid and of no effect. *See id.* at 317; *Berkefelt*, 2008 WL 4530693, at *2. As a result, the trial court did not acquire personal jurisdiction over Barahona and erred in rendering a default judgment against him. *See Spanton*, 612 S.W.3d at 316. Therefore, "the default judgment cannot stand." *Id.* at 318.

We sustain Barahona's first issue.[4]

---

[4] We note that Barahona offered additional arguments to show that service was defective aside from Shafer's failure to strictly comply with the trial court's Rule 106 order, but we need not address those additional arguments, nor need we address Barahona's other two issues asserting error on the face of the record. *See* TEX. R. APP. P. 47.1.

## Conclusion

We reverse the default judgment rendered by the trial court and remand the case for further proceedings. *See Pro-Fire & Sprinkler*, 661 S.W.3d at 171; *see also* TEX. R. CIV. P. 123 (establishing that, when judgment is reversed on restricted appeal because of defective service of process, defendant shall be presumed to have entered appearance).


Richard Hightower
Justice

Panel consists of Chief Justice Adams and Justices Hightower and Countiss.