**Reversed and Remanded and Opinion filed September 24, 2024.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-23-00609-CV

_____

**MAMIE SNEED LOCKETT, Appellant**

**V.**

**CHERYL DENISE LOCKETT AND BENNY LOUIS LOCKETT, II, Appellees**

On Appeal from the Probate Court No. 4
Harris County, Texas
Trial Court Cause No. 485,245-401

## OPINION

This appeal comes to us following a jury trial on a bill of review, in which the petitioner challenged a default judgment and the substitute service upon which it was rendered. Though several questions are presented, we consider just one: whether the evidence supports the jury's finding that the petitioner failed to prove that she was not properly served with process. We conclude that the finding lacks support because the evidence conclusively establishes that the substitute service was invalid.

# BACKGROUND

This case arises out of a probate dispute.

The decedent, Benny Lockett, Sr., was survived by his wife, Mamie Sneed Lockett (the "Wife"), and by his two children from a previous relationship, Cheryl Lockett and Benny Lockett, Jr. (collectively, the "Children").

The Children sued the Wife over matters concerning the decedent's trust. That suit ended in a settlement, in which the parties agreed to divide the trust's assets, and in which the Wife agreed to waive her interest in the decedent's estate.

Following the settlement, the Children applied to probate the decedent's will. When she learned of the application, the Wife filed a will contest. The Wife acknowledged that she had agreed to waive her interest in the estate when she entered into the settlement, but she alleged that the waiver provision was a mistake, that it should have been removed during the settlement discussions, and that she overlooked its inclusion because of stress and other factors.

The Children urged the Wife to nonsuit her will contest. When she refused, the Children filed an original petition for breach of contract, alleging that the Wife had violated the settlement agreement by bringing her will contest.

Many attempts were made to personally serve the Wife with a copy of the citation and petition. Two such attempts were made at an address on Scent Fern, which was believed to be the Wife's primary residence. No one answered the door on either attempt, and a neighbor informed the process server that he believed the house to be vacant.

A third attempt was made at an address on FM 1960, but the Wife was not there, and the process server discovered that the address was a business location for a homeowner's association, where the Wife served on the board of directors.

A fourth attempt was made at an address on Castle Haven, where the process server identified a vehicle that had once been registered to the decedent and that had since been awarded to the Wife in the settlement agreement. The process server encountered the occupant of the residence, who was later identified as the Wife's son from a previous relationship, though at the time of the encounter, the son claimed that he did not know the Wife or her whereabouts.

Two more attempts were made at an address on Whitecastle, where the Wife owned a house that she leased to her niece. The process server spoke to an unidentified female, later believed to be one of the niece's daughters, but she stated that the Wife did not live there, and she refused to provide the Wife's whereabouts.

Because all of these attempts at personal service were unsuccessful, the Children moved for substitute service. The Children asserted in their motion that the Wife resided at the address on Scent Fern, but citing the process server's findings and belief that she might be residing with her son, they requested substitute service at the address on Castle Haven. The trial court granted the Children's motion. The order authorizing the substitute service specified that the Wife could be served as follows:

> either (1) by leaving a copy of the citation and of the petition with anyone older than sixteen at [the address on Castle Haven] or in any other location specified in the statement; or (2) in any other manner, including electronically by social media, email, or other technology, that the statement or other evidence shows will be reasonably effective to give the [Wife] notice of the suit.

The process server then attempted substitute service on ten separate occasions at the Castle Haven address. On several of those occasions, the process server observed that the lights in the house were turned on, and that movement could be

3

heard inside, but no one ever answered the door, and the process server was never able to leave a copy of the citation and petition with a person older than sixteen.

While these service attempts at the Castle Haven address were ongoing, the Children advised the process server that they believed the Wife was still using her address on Scent Fern to receive mail, and they suggested that the process server "may want to post there too." The process server responded with a concern that "the Scent Fern address is not listed in the Order." The Children then replied to "just put that on hold for now" and to "go with the original plan"—i.e., to continue the service attempts at the address on Castle Haven. But as the fees for those service attempts mounted, the Children renewed their request to attempt service at the address on Scent Fern, and not just by leaving the citation and petition with a person over the age of sixteen, but also by affixing those documents to the front door in the event that no one answered. The process server complied with this request and filed a return of service stating that substitute service was achieved at the address on Scent Fern "by posting to the front door, per order for substituted service"—despite the order containing no such language.

After that return of service was filed, the process server continued to attempt substitute service at the address on Castle Haven. The Children eventually called off these attempts because they believed that substitute service had already been perfected at the Wife's address on Scent Fern. And when the Wife failed to answer the original petition for breach of contract, the Children moved for a default judgment, which the trial court granted.

The Children then obtained a writ of execution, which was personally served on the Wife at her address on Scent Fern. Claiming that she had not previously known about the allegations against her until receiving that writ of execution, the Wife filed an original petition for a bill of review. The Children counterclaimed,

4

alleging that the Wife had breached the settlement agreement once again by seeking the bill of review.

The case proceeded to a trial by jury, where the Wife testified that she had continuously lived at the address on Scent Fern. She denied ever living with her son on Castle Haven, and she explained that the decedent's car was found there because she had given that car to her son after the settlement agreement. She also explained that, on the day substitute service was attempted at the address on Scent Fern, she was having surgery in the hospital, and that, following her discharge, she stayed with her sister at her sister's residence for more than two weeks. She denied ever seeing the suit documents on her door when she returned to her address on Scent Fern. And in any event, she argued that the Children had not strictly complied with all applicable rules in attempting their substitute service.

The jury, by a vote of five to one, rejected the Wife's version of the case and found that she had failed to prove that she was not properly served with process. The jury further found that the Wife had breached the settlement agreement by seeking her bill of review, and the jury awarded the Children damages plus attorney's fees. Based on all of those findings, the trial court rendered a final judgment in favor of the Children, from which the Wife now appeals.

## ANALYSIS

A bill of review is an equitable proceeding brought by a petitioner seeking to set aside a prior judgment that is no longer subject to challenge by a motion for new trial or appeal. *See Caldwell v. Barnes*, 154 S.W.3d 93, 96 (Tex. 2004). The petitioner must ordinarily plead and prove three elements: (1) the petitioner had a meritorious defense to the underlying cause of action; (2) the petitioner was prevented from making that defense, either by the fraud, accident, or wrongful act of the respondent or by official mistake; and (3) the defense is unmixed with any

5

fault or negligence on the petitioner's own part. *Id.* But when the petitioner asserts lack of service as her only defense, as the Wife did here, she is relieved of the burden of proving the first two elements, and she can conclusively establish the third element if she proves that she was never served with process. *Id.* at 97.

Consistent with that burden of proof, the jury in this case was asked the following question:

> Did Petitioner prove by a preponderance of the evidence that she was not properly served in compliance with the Order on Substituted Service allowing for service at any location specified in the statement or in any other manner, including electronically by social media, email, or other technology, that the statement or other evidence shows will be reasonably effective to give Petitioner notice of the suit?

The jury's answer was "No." The Wife now challenges whether the evidence is legally sufficient to support that finding.

Because the Wife is attacking the legal sufficiency of an adverse finding on an issue for which she had the burden of proof at trial, she must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue—i.e., that she was not properly served. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam). We review the Wife's sufficiency challenge by first examining the record for evidence in support of the jury's finding, while ignoring all evidence to the contrary. *Id.* If we determine that no evidence supports the jury's finding, we then examine the record to determine if the contrary proposition is established as a matter of law. *Id.*

The Children do not contend that the Wife was ever personally served. However, they assert that substitute service was perfected, and that such service can be implied from the jury's double-negative finding that the Wife did not prove that she was not properly served in compliance with the order on substitute service.

6

There is no dispute that the trial court in the underlying case authorized substitute service. As stated above, that court granted an order, allowing the Wife to be served by one of two methods:

> either (1) by leaving a copy of the citation and of the petition with anyone older than sixteen at [the address on Castle Haven] or in any other location specified in the statement; or (2) in any other manner, including electronically by social media, email, or other technology, that the statement or other evidence shows will be reasonably effective to give the [Wife] notice of the suit.

This order was issued pursuant to Rule 106 of the Texas Rules of Civil Procedure. Whenever a court issues an order for substitute service under that rule, "the only authority for the substituted service is the order itself." *See Spanton v. Bellah*, 612 S.W.3d 314, 317 (Tex. 2020) (per curiam). And proof of such service "shall be made in the manner ordered by the court." *See* Tex. R. Civ. P. 107(f).

Here, the process server did not leave a copy of the citation and petition with anyone older than sixteen at the address on Castle Haven, as specified in the order for substitute service. Instead, the return of service recited (and the process server confirmed at trial) that the documents were affixed to the front door at the address on Scent Fern.

The process server deviated from the order in two ways: first, by affixing the documents to a front door, rather than by leaving the documents with a person over the age of sixteen; and second, by attempting substitute service at the address on Scent Fern, rather than the address on Castle Haven. Because the service did not comport with the manner ordered by the court, the service was "invalid and of no effect." *See Uvalde Country Club v. Martin Linen Supply Co.*, 690 S.W.2d 884, 885 (Tex. 1985) (per curiam) ("Failure to affirmatively show strict compliance with the Rules of Civil Procedure renders the attempted service of process invalid and of no

effect."); *Smith v. Commercial Equip. Leasing Co.*, 678 S.W.2d 917, 918 (Tex. 1984) (holding that a default judgment was void where the manner of citation did not comport with the terms of citation).

The Children contend that these deviations are not fatal because, as they explain in their brief, "the order permitted substituted service at any other location and in any other manner that would be reasonably effective to give [the Wife] notice of the suit." They further explain that they complied with the order because the Wife testified during the trial that the address on Scent Fern was her homestead, and because the process server likewise testified that affixing the citation and petition to the front door of the Wife's homestead would be reasonably effective to give the Wife notice.

This argument fails for two reasons.

First, a process server has no discretion to determine what manner of service will be "reasonably effective to give the defendant notice of the suit," even when an order authorizing substitute service contains such general language. *See Rivers v. Viskozki*, 967 S.W.2d 868, 870 (Tex. App.—Eastland 1998, no pet.) (where an order authorized substitute service by delivering a copy of the petition to anyone over the age of sixteen at the defendant's usual place of abode "or in any manner which will be reasonably effective to give Defendant notice of the impending suit," substitute service was improper where the process server simply affixed the petition to the defendant's front door). That discretion is left instead to the trial court that issues the order, and Rule 106 requires the trial court's determination to be expressed in the order itself and to be supported by evidence attached to the motion for substitute service, not evidence developed post hoc at a trial on a bill of review. *See* Tex. R. Civ. P. 106(b)(2).

8

Second, even if the order had expressly authorized substitute service by affixing the citation and petition to a front door, the order did not merely authorize that manner of service "at any other location," as the Children explain in their brief. Rather, the order authorized substitute service "at any other location *specified in the statement.*"

So what is this "statement"? During deliberations, the jury submitted a note asking for clarification on that very word, but the judge's written response was simply to "review the evidence and follow the instructions of the court."

The word is taken from Rule 106, where it appears several times: first in Subsection (b), which states that the movant for substitute service must file a "motion supported by a statement—sworn to before a notary or made under penalty of perjury—listing any location where the defendant can probably be found"; and later in Subsection (b)(1), which authorizes substitute service "by leaving a copy of the citation and of the petition with anyone older than sixteen at the location specified in the statement." The trial court's order authorizing substitute service largely tracks the text of Subsection (b)(1), but the order specifies the address at Castle Haven, while alternatively allowing for substitute service "at any other location specified in the statement."

For substitute service to be proper under Rule 106, a sworn statement is necessary. *See Wilson v. Dunn*, 800 S.W.2d 833, 836 (Tex. 1990) ("In this case, Dunn was not strictly served in compliance with Rule 106(b) because substitute service was not properly authorized absent the affidavit explicitly required by the rule."); *Godwin v. Godwin*, No. 1:22-CV-1263-RP, 2023 WL 534594, at *2 (W.D. Tex. Aug. 18, 2023) (denying a motion for substitute service because the plaintiff did not support her motion with a sworn statement).

9

In this case, the Children supported their motion for substitute service with a sworn statement from the process server, averring that the address on Castle Haven was the Wife's "usual place of business, usual place of abode, or other place where [the Wife] can probably be found." But there was no similar sworn statement regarding the address at Scent Fern.

The Children asserted in their motion for substitute service that the address on Scent Fern was the Wife's home, but the motion itself was unsworn. The process server signed a separate sworn statement, averring that he twice attempted personal service at the address on Scent Fern. But the process server further averred that no one answered the door, and that when he spoke to a neighbor, he was informed that "the people that occupy the home moved out over a month ago and the house is currently vacant." Nothing in this sworn statement can be construed as a statement listing the address on Scent Fern as a location where the Wife could probably be found, as required by Rule 106(b). Absent such a statement, the trial court's order could not have authorized substitute service at that location.

Courts must "rigidly" enforce rules governing service of process when a default judgment is rendered because the only ground supporting the judgment is that the defendant has failed to respond to the action in conformity with the applicable procedure for doing so. *See Hubicki v. Festina*, 226 S.W.3d 405, 408 (Tex. 2007) (per curiam). If the defendant can show that the person commencing the action has also failed to conform to procedural rules, then "under a principle of equality the derelictions offset each other and the merits of the controversy may be brought forward for consideration." *Id.*; *see also Creaven v. Creaven*, 551 S.W.3d 865, 870 (Tex. App.—Houston [14th Dist.] 2018, no pet.) ("Virtually any deviation from the statutory requisites for service of process will destroy a default judgment.").

The evidence here conclusively established that the Children did not strictly comply with the rules of procedure in perfecting substitute service. Accordingly, there is no evidentiary support for the jury's double-negative finding that the Wife did not prove that she was not properly served in compliance with the order on substitute service. Instead, the Wife demonstrated as a matter of law the contrary proposition that the service of process was improper.

We sustain the Wife's first issue. In light of this disposition, we need not consider the Wife's remaining issues, which challenged the jury's other findings that she breached the settlement agreement by seeking her bill of review, and that the Children were entitled to attorney's fees. *See* Tex. R. App. P. 47.1.

## CONCLUSION

The trial court's judgment is reversed and the case is remanded to that court for additional proceedings consistent with this opinion. *See Ross v. Nat'l Ctr. for the Emp't of the Disabled*, 197 S.W.3d 795, 798 (Tex. 2006) (per curiam) (setting aside a default judgment in an appeal from the denial of a bill of review and remanding for a trial on the merits in the underlying suit); *see also* Tex. R. Civ. P. 123 (providing that when a judgment is reversed for lack of service, no new citation need be issued or served and that the defendant is presumed to have already entered her appearance).


/s/    Tracy Christopher
        Chief Justice


Panel consists of Chief Justice Christopher and Justices Wise and Hassan.

11